RUBY LACKEY v. UNITED RAILWAYS COMPANY of ST. LOUIS, Appellant.

Division Two, May 26, 1921.

1. **DEMURRED TO EVIDENCE: Contributory Negligence: Crossing Street-Car Track: Presumptions.** Where defendant's double-track street railway ran north and south along a private right of way across a public street running east and west, and there were regular stopping places for cars to take on passengers at the northwest and southeast corners of the intersection, and a person at the southeast corner had signaled a north-bound car to stop, a person starting from the northwest corner across the tracks and struck in such public street by said north-bound car, which was running at an excessive speed and did not stop, had a right, in the absence of knowledge to the contrary, to presume that the car was not running at an excessive speed and that it would stop at the regular stopping-place, and hence was not guilty of contributory negligence as a matter of law.

2. **NEGLIGENCE: Last Chance Doctrine: Evidence of Peril.** If a motorman operating a street-car across a public street sees a pedestrian approaching the street-car track, he has a right to assume, until a different intention becomes apparent, that such pedestrian will use due care for himself and will not step in front of the car; and, hence, in a suit based upon the last chance rule, it is error to submit that issue to the jury in the absence of evidence to show that at some particular time before he was struck the pedestrian was going into danger and was oblivious of his peril,

and that the motorman either saw or could have seen him in time to act.

3. **DEATH STATUTE:** Section 4217, R. S. 1919, Penal: Pleading Circumstances Enhancing Penalty: Pecuniary Loss. Although the death statute, Section 4217, Revised Statutes 1919, is penal as to the entire amount recoverable under it, yet if there are many special circumstances tending to enhance the amount of the penalty, such as pecuniary loss by reason of the death, such circumstances should be pleaded in the petition, in order that defendant may be apprised that evidence thereof will be offered and be prepared to meet it.

4. **NEGLIGENCE:** Proximate Cause of Injury: Instruction. An instruction to the jury is erroneous which authorizes a finding for plaintiff in a death case on the ground of defendant's negligence without requiring the jury to find from the evidence that the negligence complained of was the proximate cause of the injury, and which does not require a finding of specific and definite facts from which an inference necessarily follows that the negligence found was the cause of the injury.

5. ———: Section 4217, R. S. 1919: Pleading Ordinance. In a suit under Section 4217, Revised Statutes 1919, where the petition counts upon two specifications of negligence, to-wit: (1) that the street car which caused the injury was running in excess of the speed limit of fifteen miles per hour fixed by a city ordinance; and (2) that the motorman in charge of the car failed to stop the car or check its speed after he saw, or by the exercise of ordinary care could have seen the decedent in time to have done so, it is error to admit in evidence, over defendant's objection, the St. Louis Vigilant Watch Ordinance which was not pleaded in the petition as a ground of recovery, and which required the motorman to keep a vigilant watch for vehicles and persons on foot either on the track or moving toward it and on the first appearance of danger, to such vehicles or persons, to stop the car in the shortest time and space possible.

6. ———: ———: Contributory Negligence: Unpleaded Ordinance Admissible to Rebut. In a suit under Section 4217, Revised Statutes 1919, by a widow for the death of her husband killed at a street intersection by a street car of defendant, where there is a plea of contributory negligence which defendant attempts to sustain by evidence, and where plaintiff produces evidence that the car was signaled to stop at a regular stopping place by a person desiring to board it and if it had stopped the injury would not have occurred, it was competent for plaintiff, in order to rebut such evidence of contributory negligence, to introduce in evidence a

city ordinance providing that cars should stop on the near side of the street and that it should be the duty of the motorman or other person running the car to bring it to a full stop at the corner of the street as provided, whenever signaled or motioned to by any person standing on such corner desiring to board such car, even though such ordinance had not been pleaded.

Appeal from St. Louis City Circuit Court,—*Hon. J. Hugo Grimm,* Judge.

REVERSED AND REMANDED.

*Charles W. Bates* and *T. E. Francis* and *Albert D. Nortoni* for appellants.

(1.) The court should have given appellant's instruction in the nature of a demurrer to the evidence and peremptorily directed a verdict for it because: (a) The negligence of decedent so clearly appears on the evidence contributing directly to the collision and his consequent injuries and death as to preclude respondent's right of recovery as a matter of law. Schmidt v. Ry. Co., 191 Mo. 215; Laun v. Ry. Co., 216 Mo. 578; Keele v. Ry. Co., 258 Mo. 78; Green v. Ry. Co., 192 Mo. 131; Vandeventer v. Ry. Co., 177 S. W. 838; State ex rel. Peters v. Reynolds, 214 S. W. 123; Mockowik v. Ry. Co., 196 Mo. 550; Stotler v. Ry. Co., 204 Mo. 619; Guyer v. Ry. Co., 174 Mo. 344; Dyrcz v. Ry. Co., 238 Mo. 46, 47; Rollinson v. Ry. Co., 252 Mo. 543; Gubernick v. Rys. Co., 217 S. W. 33; Holland v. Ry. Co., 210 Mo. 338; Boring v. Ry. Co., 194 Mo. 251; Roenfeldt v. Ry. Co., 180 Mo. 554. (b) Even though the street car was running in excess of the ordinance speed, this does not absolve decedent from the duty to exercise ordinary care to look and listen in the interest of his own safety before going upon the track. Schmidt v. Ry. Co., 191 Mo. 229; Laun v. Ry. Co., 216 Mo. 579; Stotler v. Ry. Co., 204 Mo. 637; Green v. Ry. Co., 192 Mo. 142; Weller v. Ry. Co., 120 Mo. 653; Kenney v. Ry. Co., 105 Mo. 284; Holland v. Ry. Co., 210 Mo. 351. (c) Although in some cases, where nothing to the contrary appears,

persons deceased are presumed to have exercised ordinary care for their own safety in approaching the track, no such presumption obtains on this record to be utilized in aid of the verdict, for that the facts in evidence rebut, overcome and dispel any such presumption. Schmidt v. Ry. Co., 191 Mo. 232; Burge v. Ry. Co., 244 Mo. 94; State ex rel. Peters v. Reynolds, 214 S. W. 123; Higgins v. St. Louis Ry. Co., 197 Mo. 318; Weller v. Ry. Co., 120 Mo. 650.   (d) Presumptions have no place in the presence of actual facts disclosed to the jury, or when plaintiff should have known the facts had he exercised ordinary care. Mockowik v. Ry. Co., 196 Mo. 572; Bragg v. St. Ry. Co., 192 Mo. 354; Nixon v. Ry. Co., 141 Mo. 439; Reno v. Ry. Co., 180 Mo. 483; State v. Swearengin, 269 Mo. 186; Sowders v. Ry. Co., 127 Mo. App. 124.   (e) Neither may a pedestrain presume that a car is not running in excess of the ordinance speed when he did not see the car. Reno v. Ry. Co., 192 Mo. 142; Green v. Ry. Co., 192 Mo. 142; Stotler v. Ry. Co., 204 Mo. 619 and authorities cited supra, paragraphs (c) and (d).   (f) "That which the decedent could have learned by the exercise of ordinary care (in approaching the crossing) will be imputed to him as a known fact." State ex rel. Peters v. Reynolds, 214 S. W. 123; Vandeventer v. Ry. Co., 177 S. W. 838; Peters v. Lusk, 200 Mo. App. 382; Schmidt v. Ry. Co., 191 Mo. 215; Laun v. Ry. Co., 216 Mo. 578; Stotler v. Ry. Co., 204 Mo. 639.   (g) There is no humanitarian or last-clear-chance doctrine in the case because the petition does not state facts sufficient to constitute a cause of action thereon, in that it is not averred that decedent was oblivious, or that the motorman either saw, or might, by the exercise of ordinary care, have seen, that he was oblivious to the peril. Knapp v. Dunham, 195 S. W. 1062; Rubick v. Sandler, 219 S. W. 406; Marshall v. Rys. Co., 205 S. W. 971; Stark v. Bingaman, 223 S. W. 946.   (h) There was no duty on the part of the motorman to commence the stopping of the car until he saw, or might, by the exercise of ordinary care, have seen,

that decedent was both in peril and was oblivious there-
to, for until then the motorman was justified in assuming
that he would hear the sounding of the gong and stop
before coming upon the track in a place of danger.
Schmidt v. Ry. Co., 191 Mo. 233, 234; Keele v. Ry. Co.,
258 Mo. 79; Guyer v. Ry. Co., 174 Mo. 351; Reno v. Ry.
Co., 180 Mo. 489; Roenfeld v. Ry. Co., 180 Mo. 366; Knapp
v. Dunham, 195 S. W. 1062; Stark v. Bingaman, 223 S.
W. 946; Rubnick v. Sandler, 219 S. W. 406; Marshall v.
Railroad Co., 205 S. W. 973; Schall v. Rys. Co., 212 S.
W. 891; Veatch v. Wabash Ry. Co., 145 Mo. App. 240;
Rollinson v. Ry. Co., 252 Mo. 537, 538; Bennett v. Ry. Co.,
122 Mo. App. 714; Markowitz v. Ry. Co., 186 Mo. 358;
Sanguinette v. Railroad Co., 196 Mo. 497; Pope v. Ry.
Co., 242 Mo. 240; Hebeler v. Ry. Co., 132 Mo. App. 551;
Reeves v. Ry. Co., 251 Mo. 178; Schupp v. Ry. Co., 166
Mo. App. 597.   (i)  Even though decedent was walking
east and looking to the northeast, the motorman was not
required to commence the stopping of the car until he
discovered that he did not heed the sounding of the gong
and appeared notwithstanding to be oblivious thereto,
for until then the motorman could assume that decedent
would hear the gong and stop before coming upon the
track.   Schmidt v. Ry. Co., 191 Mo. 234; Bennett v.
Ry. Co., 122 Mo. App. 714; Aldrich v. Transit Co., 101 Mo.
App. 88; Keele v. Ry. Co., 258 Mo. 79; Candee v. Ry. Co.,
130 Mo. 152; Chamberlain v. Ry. Co., 133 Mo. 604, 605;
Sinclair v. Ry. Co., 133 Mo. 243; Pope v. Ry., 142 Mo. 240;
Reeves v. Ry. Co., 251 Mo. 177; Veatch v. Ry. Co., 145
Mo. App. 240; Hebeler v. Ry. Co., 132 Mo. 551.   (j)
"Negligence is a positive wrong and will not be pre-
sumed," but must be proven.   Witting v. Railroad Co.,
101 Mo. 640.   (k)  "It requires more than the showing
of a mere possibility that an accident might have been
avoided in order to bring the case within the humani-
tarian or last-clear-chance doctrine."  Markowitz v. Met.
St. Ry., 186 Mo. 359; White v. Ry., 159 Mo. App. 614.
(l)  "Mere error of judgment on the part of the motor-

man does not suffice to show negligence." Roenfeld v.
Ry. Co., 180 Mo. 567; Bennett v. Ry. Co., 122 Mo. App.
713. (m) There being no duty on the motorman to com-
mence the stopping of the car until he saw, or by the
exercise of ordinary care could have seen, that decedent
was not going to heed the sounding of the gong and that
he was therefore in peril and oblivious to both such gong
and such peril, because of his failure to heed such gong,
and there being no evidence as to the distance the street
car was away from decedent at that time, it cannot be
inferred that the car could have been stopped by the use
of ordinary care, with the appliances at hand for that
purpose, while running at thirty miles per hour, for to do
so would involve the piling of one inference on a prior
inference and this the law will not tolerate. Hamilton
v. Ry. Co., 250 Mo. 722; Whitesides v. Railroad Co., 186
Mo. App. 618; Glick v. Railroad Co., 57 Mo. App. 104.
(n) In view of the affirmative evidence of respondent's
expert motorman, to the effect that it would require from
115 to 120 feet space in which to stop the car, and his
positive statement that it could not be stopped between
a point at fifty feet south of the south line of Plymouth
avenue and the center line of the north sidewalk on
Plymouth avenue, where decedent was struck, the finding
that the car could have been stopped and the collision
averted between the time the motorman discovered, or
could by the exercise of ordinary care discover, that
decedent did not heed the gong, and that because of that
fact he appeared to be oblivious of the danger and was
therefore in peril, is not founded upon a "basis of fact,"
but rather rests alone upon mere guess or the "fog of
conjecture." McGee v. Ry. Co., 214 Mo. 543; White v.
Mo. Pac., 159 Mo. App. 513; Guyer v. Ry. Co., 174 Mo.
351; Battles v. Rys. Co., 178 Mo. App. 519; Green v.
Ry. Co., 192 Mo. 140; Veatch v. Wabash Ry. Co., 145 Mo.
App. 232; Hamilton v. Railroad Co., 250 Mo. 722; White-
sides v. Railroad, 186 Mo. App. 618. (o) The last-clear-
chance doctrine does not obtain where both parties are

actively and contemporaneously negligent, until it is too late to prevent the accident, for in such circumstances plaintiff's negligence is not remote, but rather is active and proximate in the chain of causation, so as to be regarded in the eye of the law as concurrent in point of time. Watson v. Ry. Co., 133 Mo. 250, 251; Reeves v. Ry. Co., 251 Mo. 178; Pope v. Ry., 242 Mo. 240; Everett v. Ry. Co., 42 Pac. 219; Ross v. Ry. Co., 132 Mo. App. 480. (2) The court should have excluded the Vigilant Watch Ordinance, of the City of St. Louis, from evidence on defendant's objection, because it was not pleaded and the ordinance was not competent under the averments wherein a breach of the humanitarian or last-clear-chance doctrine is sought to be alleged, because it is not in keeping with that doctrine, in that its words import a broader obligation, which entirely omits and ignores essential obliviousness to peril under this doctrine. Knapp v. Dunham, 195 S. W. 1062; Stark v. Bingaman, 223 S. W. 946; Rubick v. Sandler, 219 S. W. 401. (3) The court should have excluded from evidence Section 2386, Revised Code of St. Louis for 1912, touching the matter of cars stopping at a corner on a signal by a proposed passenger on appellant's objection, also the evidence that Hadley waved because this ordinance was not pleaded, and even if it were, in no view did it raise any duty in favor of decedent, a pedestrian crossing the street and moreover the evidence that Hadley waved was prejudicial. (a) It was not competent on the theory that decedent saw Hadley on the southeast corner wave for the car to stop and that he therefore presumed on the ordinance that the car would stop on such signal, because the evidence is undisputed and conclusive that he did not see Hadley wave at the car, and in such circumstances a mere presumption may not be indulged to establish a fact where there is actual evidence of the non-existence of such facts which it sought to presume. Bragg v. Ry. Co., 192 Mo. 354; Reno v. Railway, 180 Mo. 469. (b) This ordinance was not competent as tending to mitigate

the obvious contributory negligence of decedent, because
the evidence is conclusive decedent was looking northeast
and did not look toward Hadley.  To utilize the ordinance
in that view would require first an inference (contrary
to the facts disclosed) that decedent looked southeast
and saw Hadley wave at the car and then on this first
inference of fact pile a second inference to the effect that
he thereupon inferred or presumed the car would stop.
Inference may not thus be piled upon inference.  Hamil-
ton v. Railroad, 250 Mo. 722; Whitesides v. Railroad,
86 Mo. App. 618; Glick v. Railroad, 57 Mo. App. 104.
(4)  All of the damages in excess of the penalty of $2,000
are compensatory damages awarded "in the discretion of
the jury," to compensate a loss sustained and evidence
concerning the details of such loss to be compensated
"in the discretion of the jury" must be introduced.
Boyd v. Ry. Co., 249 Mo. 120, 126; Johnson v. Ry. Co.,
270 Mo. 418; Rollinson v. Lusk, 217 S. W. 328; Kirk v.
Ry. Co., 265 Mo. 341; Smelser v. M. K. & T., 262 Mo.
25; Colvin v. Railroad, Co., 200 S. W. 718; State ex rel.
v. Dunham, 213 S. W. 459; Johnson v. Mining Co., 187 S.
W. 1.  (a)  The statute gives not one right alone, but
rather two rights, one to sue for the penalty of $2,000
and one to sue for compensatory damages to be fixed in
the discretion of the jury on the evidence of loss sustained.
The two rights are separate and distinct.  Johnson v.
Ry. Co., 270 Mo. 424, 425.  (b)  The petition is insufficient
in that it pleads or states no facts authorizing the
reception of evidence tending to prove or the recovery
of compensatory damages apart from the $2,000 penalty.
Such facts must be pleaded in order to authorize the
introduction of evidence thereof or the recovery of such
compensatory damages.  Rollinson v. Lusk, 217 S. W.
328; Smelser v. Railroad Co., 262 Mo. 25; Johnson v.
Mining Co., 187 S. W. 1; Johnson v. Mining Co., 171 Mo.
App. 143; Boyd v. Ry. Co., 249 Mo. 120 to 126; Johnson
v. Ry. Co., 270 Mo. 424, 425; Troll v. Gaslight Co., 182
Mo. App. 600; 5 Ency. Plead. & Pract. 874; Kirk v. Rail-

road, 265 Mo. 341. (c) The court should have sustained appellant's objection to respondent's evidence introduced tending to prove compensatory damages, also appellant's objections to the introduction of the purported American Experience Tables of Mortality as tending to prove loss to be compensated, because no facts were pleaded in the petition authorizing a reception of such evidence, nor the recovery of such damages. Rollinson v. Lusk, 217 S. W. 328. (5) Instruction No. 1 requested by respondent, but modified and given by the court after such modification, is erroneous, misleading and positive misdirection: (a) This instruction covers the whole case and authorizes a verdict for plaintiff without requiring the jury to find that excessive speed was the proximate cause. Battles v. Rys. Co., 178 Mo. App. 614; Bluedorn v. Railroad Co., 121 Mo. 258; Kelley v. Railroad, 75 Mo. 138; King v. Railroad, 211 Mo. 1; Schmidt v. Transit Co., 140 Mo. App. 182; Hunt v. Railroad Co., 262 Mo. 275. (b) In so far as this instruction attempts to submit facts for a finding under the humanitarian or last-clear-chance doctrine, it is erroneous, misleading and misdirection. Knapp v. Dunham, 195 S. W. 1062; Stark v. Bingaman, 223 S. W. 946; Rubick v. Sandler, 219 S. W. 406; Marshall v. Rys. Co., 205 S. W. 79; Schmidt v. Railroad, 191 Mo. 215; Keele v. Ry. Co., 258 Mo. 79.

*W. H. Douglas* for respondent.

(1) The defendant's street car was approaching a regular stopping place at a time when there was a passenger waving the car to stop for him to take passage, and deceased had a right to assume that the car would stop for the prospective passenger and was not guilty of negligence in acting on this presumption. McMiens v. Rys. Co., 274 Mo. 326; Percell v. Railroad Co., 126 Mo. App. 51; Harrington v. Dunham, 273 Mo. 426; Harrington v. Ry. Co., 217 S. W. 879; Cobleigh v. Ry., 75 Fed. 247. (2) Defendant was negligent in running the car at a speed in excess of the ordinance limit. Gratiot

v. Railroad, 116 Mo. 450; Hutchinson v. Railroad, 161 Mo. 246; Riska v. Depot Co., 180 Mo. 168; Epstein \ Railroad, 197 Mo. 720; Powers v. Railroad, 202 Mo. 267; King v. Railroad, 211 Mo. 1; Everett v. Railroad, 214 Mo. 55; McKenzie v. Railroad, 216 Mo. 1; Strauchon v. Ry. Co., 232 Mo. 587. (3) It was negligence for the motorman not to check the speed of his car when he saw deceased approaching the track with a demeanor indicating an intention to cross ahead of the car. Kolb v. Railroad, 102 Mo. App. 143; Riska v. Railroad, 180 Mo. 168; Deitring v. Railroad, 109 Mo. App. 538; Heintz v. Railroad, 115 Mo. App. 667; Zander v. Railroad, 206 Mo. 445; Powers v. Railroad, 202 Mo. 267; Waddell v. Railroad, 213 Mo. 8; Felver v. Railroad, 216 Mo. 195; Dahmer v. Railroad, 136 Mo. App. 443; Draper v. Rys. Co., 199 Mo. App. 489. (4) It will be presumed that the deceased both looked and listened for an approaching car before crossing the defendant's track, as there was no evidence by anyone that he did not look or listen. Powers v. Transit Co., 202 Mo. 279-280; Tanner v. Railroad, 186 Mo. App. 269; McQuitty v. Railroad, 196 Mo. App. 454; Eckhard v. Transit Co., 190 Mo. 610; Riska v. Railroad, 180 Mo. 188; McKenzie, v. Rys. Co., 216 Mo. 22; Bruce v. Rys. Co., 175 Mo. App. 576; Troll v. Rys. Co., 169 Mo. App. 260; Stauchon v. St. Ry Co., 232 Mo. 597. (5) Deceased, having looked at the car (as the law presumes he did look), was not negligent in failing to discern its excessive speed, for mere error of judgment is not negligence in law. Thompson on Negligence, sec. 1669; 7 White's Supp. Thompson on Negligence, sec. 1669; Strauchon v. Ry. Co., 232 Mo. 598-602; Murray v. Transit Co., 108 Mo. App. 507-8; Heintz v. Transit Co., 115 Mo. App. 671; Powers v. Transit Co., 202 Mo. 280; Riska v. Depot Co., 180 Mo. 168; Deitring v. Railroad, 109 Mo. App. 524; Irwin v. St. Rys. Co., 196 Mo. App. 670. (6) Even if deceased was negligent, the motorman, by reasonable care, could have discovered his peril in time to have avoided injury. Moore v. Railroad,

194 Mo. 1; Epstein v. Railroad, 197 Mo. 720; Powers v. Railroad, 202 Mo. 271; Waddell v. Railroad, 213 Mo. 8; Everett v. Railroad, 214 Mo. 255; Felver v. Railroad, 216 Mo. 195; Draper v. Railways Co., 199 Mo. App. 489. (7) Plaintiff's instruction numbered 1 required the jury to find that the negligent acts alleged in the instruction were the proximate cause of deceased's death, even though it did not state in direct terms that the jury must "find that either one or both of such acts of negligence directly caused the death of deceased," for this instruction required the jury to find, first, under the excessive-speed ordinance, that deceased was in the exercise of ordinary care before they could find for plaintiff, and, second, under the humanitarian doctrine it required the jury to find facts which, if true, constituted the proximate cause of the accident. Deschner v. Railroad Co., 200 Mo. 332; Tranbarger v. Railroad, 250 Mo. 58; Cornovski v. Transit Co., 207 Mo. 270; Austin v. Transit Co., 115 Mo. App. 151; Sutter v. Ry. Co., 208 S. W. 852; State ex rel. v. Ellison, 208 S. W. 443. (8) Instructions must be taken and read together and construed as a whole. (9) The copy of the American Table of Mortality offered in evidence was competent, and the court will take judicial notice of this table without its introduction in evidence. Timson v. Coal Co., 220 Mo. 614; Medley v. Mining Co., 207 S. W. 890; Southern Pac. Co. v. DeValle-DeCosta, 190 Fed. 698. (10) There was evidence on which the jury were authorized to fix compensatory damages. Boyd v. Railroad, 236 Mo. 88; Kettlehake v. Car Co., 171 Mo. App. 538; Troll v. Gaslight Co., 182 Mo. App. 600; Kirk v. Railroad, 265 Mo. 341; Browning v. Railroad Co., 124 Mo. 55.

WHITE, C.—The appeal in this case is from a judgment in favor of the plaintiff, recovered on account of the death of the plaintiff's husband, John W. Lackey, caused by the alleged negligence of the defendant.

Statement.

Lackey, while a pedestrian on the street was struck and killed by a street car of the defendant, July 23, 1918. At that time the defendant operated two parallel street railway tracks, called the Hodiamont tracks, along its private right of way across Plymouth avenue. Plymouth avenue, at the point of intersection ran east and west and and was forty-five feet wide; the right of way was about twenty-two feet wide. The street car tracks at that point were each five feet wide with a space of four and one-half feet between them; along that space was a ditch three and a half feet wide and eighteen inches deep. Northbound cars ran on the east track, and southbound cars ran on the west track. A drug store stood at the northwest corner of Plymouth avenue and the right of way. A granitoid walk or landing was on the east side of the drug store where passengers boarded and alighted from cars running south. This sidewalk was about forty feet long, and at the front was against the drug store and extended 8 feet, 4 inches toward the track, with a space of 20 inches between the edge of the walk and the west rail of the west track. On the southeast corner of Plymouth avenue and the right of way was likewise a granitoid walk three and a half or four feet wide, extending along the track southward from Plymouth avenue about seventy-five feet, where cars going north regularly discharged and received passengers. The following sketch shows approximately the position of the street, the car tracks, and surrounding objects:

On the day mentioned John W. Lackey, husband of the plaintiff, was seen on the walk alongside the drug store. He was seen to step down from the walk into the twenty-inch space between that and the west rail of the southbound track, or upon that rail. This was at a point 8 or 10 feet north of the north line of Plymouth avenue. He was not seen any more by any witness who testified until the instant before he was struck by a car running north on the east track; he was then at a point where the sidewalk crosses that track, about twenty feet from where he was first seen.

Three witnesses for the plaintiff testified to seeing the incidents preceding and at the moment of the collision. Two of these witnesses, Hadley and Cahill, were diagonally across the street at the southeast corner of Plymouth and the right of way on the granitoid walk where passengers were received upon cars running north; the third was Katie Self, sitting on the east end of her porch on the north side of Plymouth avenue and east of the track. Referring to the plat which we have made for convenience, ''a'' represents the point where Lackey was seen to step down off the walk by the drug store at a point 8 or 10 feet north of the north line of Plymouth avenue; ''b'' is the point on the northbound track where he was struck. His body was found at point ''c'' between the two tracks about twenty-five feet north of where he was struck; ''d'' is the point where two witnesses, Don Hadley and John Cahill, were standing when Hadley saw Lackey step off the walk at point ''a''; ''e'' is the point on the porch of the house east of the track where Katie Self was sitting and saw the collision; ''f'' is the point where Hadley was at the moment of collision; ''g'' is the point where Cahill was at the instant of collision.

The only person who saw Lackey at the point ''a'' was Hadley. He was then at point ''d'', talking to Cahill, and waiting for a car to go north. The moment he saw Lackey step down from the sidewalk at point ''a'', witness looked south and saw a car coming from that direction about one hundred and fifty feet away. He signaled that car to stop for him, turned and walked rapidly south along the granitoid walk about twenty feet, and didn't see Lackey any more until after he was struck. The car did not stop at his signal but passed on, struck Lackey and stopped with the rear end of the car about thirty-five feet north of Plymouth avenue. Lackey at that time was lying between the two tracks in the ditch, about thirty feet north of Plymouth avenue. The car was running at a very high rate of speed about 30 or 35 miles an hour. Cars going north on that

track usually stop with the rear end about 40 feet south of Plymouth avenue and the front end about at the property line. Witness expected the car to stop at that point. It was about 8:30 in the evening of July 23rd, and light enough for anybody to see. The car coming from the south could have been seen at a considerable distance by anyone looking. The witness was cross-examined at length; he repeated several times that at the time he saw Lackey the latter was in the act of stepping off the sidewalk alongside the drug store eight or ten feet north of the sidewalk on Plymouth avenue. He said Lackey was walking slowly, looking down to see where to put his feet. At the point where he was Lackey could not conveniently have crossed the ditch between the tracks, but would have had to walk south eight or ten feet to the sidewalk on Plymouth avenue and cross the tracks on that sidewalk.

John Cahill testified that he intended to board a southbound car which regularly would stop at the granitoid walk beside the drug store. He stopped at the point "d" on the southeast corner for a few minutes, talking with Mr. Hadley. It was his intention then to cross diagonally to the corner where he should take the next car going south. He did not see Lackey at that time. He saw the car Hadley intended to take coming from the south, about 150 feet away, and started to run diagonally across ahead of it; he crossed the northbound track and had got about to the middle of Plymouth avenue on the southbound track when he saw the car coming north was not going to stop for Hadley. His testimony then continued as follows:

"Q. Now, when you started from the southeast corner across there, how far was the car south of you then that Mr. Hadley wanted to get on, do you know? A. About one hundred and fifty feet.

"Q. Did you see the car any more after that? A. Not until I got in the middle of the southbound track, then I heard him ringing the gong, and I turned around and I seen he was going to pass Mr. Hadley up.

I looked back and seen Mr. Hadley standing there; he was waving the paper for him to stop the car; I seen him ringing the bell and kept ringing—and I seen he was going to pass him up, and I stood in the middle of the southbound track, and as he got in the middle of Plymouth avenue he started to ring the bell again; and I seen Mr. Lackey about the middle of the car track. He started to step back; he seen he was too late, and he jumped up in the air, like to jump on the fender to save himself, and the car struck him and knocked him in the middle of the ditch. He landed on his feet, his face turned south; his head hit the car track, and his head lay on the car tracks and the rear guard on the hind trucks struck his face and knocked him in the ditch.

"Q. Now, where were you then? A. Standing in the middle of the southbound track:

"Q. Where were you in Plymouth avenue, to the north side or in the middle, or to the south side? A. Right in the middle of Plymouth."

The witness testified that the car was running at a very high rate of speed, about thirty-five or forty miles an hour; that the bell of the car was ringing when it arrived about fifty feet south of Plymouth avenue, and the motorman commenced ringing again, loudly, about the time he reached the middle of Plymouth avenue. He rang the bell hard and "hollered 'look out' He said, further, the car did not make much noise running on the right of way because it was not on a granitoid foundation. On cross-examination he said he would judge that Lackey jumped about eighteen inches or two feet high; jumped like for the fender and grabbed the car so as to save himself; that he never saw Lackey until Lackey was on the northbound track, when the front end of the car was within fifteen or twenty feet of him.

Mrs. Katie Self testified that she lived on the north side of Plymouth avenue, east of the tracks; that her house stood back fifty feet from Plymouth avenue; that the west side of the house was only about three and a

half feet east of the track. She sat on the east end of her porch, reading. She was suddenly attracted by the violent ringing of the bell of the street car. Street cars passed that way every four minutes through the day, ringing bells and making noises, and she usually paid no attention to the noise they made, but the ringing of the bell was so violent and unusual that she looked up and, this is the way she described the collision:

"Q. What did you see when you looked up? A. When I looked up when the bell was ringing I saw a man crossing the track. He was on the last track east; that is, the northbound car track, and when I looked up the car was just about five feet from him and he went to step forward and became confused and jumped in the air as if to let something go under him, as if he was going to be struck, and while he was in midair the car struck him.

"Q. Where was he at that time with reference to the crossing on Plymouth avenue; was he on the regular crossing? A. He was on the right of way for going back and forth.

"Q. Where people walk across? A. Yes, sir.

"Q. Which side of Plymouth, north or south? A. On the north side. He was going east.

"Q. Did you see the car after it stopped? A. Yes, sir.

"Q. Where was it with reference to the north side of Plymouth avenue? A. From where it hit him?

"Q. Yes. A. It was about fifty or fifty-five feet, the back end of the car, from where it hit him.

"Q. After the car stopped did it stand stationary or did it move or back up? A. I couldn't say; I didn't see it.

"Q. Where was the man at the time? A. He was between about twenty-five feet from where he was hit from the crossing; it threw him twenty-five feet.

"Q. I believe he was laying between the tracks you say? A. Yes, sir. There is a little ditch between the two tracks."

The witness judged that the car was going at the rate of thirty miles an hour.

Another witness, Mrs. Mary Grace, lived further east on Plymouth avenue. She testified to the unusual clamor and ringing of the bell, the screaming of the people, and that the car was going at thirty or thirty-five miles an hour.

No witness put the speed of the car at less than thirty miles an hour.

An ex-motorman who was familiar with the operation of the cars of the 600 series, of which the car in question was one, swore that under the conditions shown such a car traveling at fifteen miles an hour could be stopped within forty or forty-five feet, and a car traveling thirty miles an hour, in from one hundred and fifteen to one hundred and twenty feet. He said those cars could not be run faster than thirty miles an hour unless going down grade; that the appliances used for stopping cars could be applied instantaneously, "right now," in a fraction of a second. Witness also figured the speed per second of a car going thirty miles per hour is forty-four feet; at thirty-five miles an hour a car travels fifty-one feet per second; and at forty miles an hour, sixty feet.

The plaintiff introduced and read the Revised Code of the City of St. Louis, Section 2381, prohibiting street cars from being propelled at a greater rate of speed than fifteen miles an hour in parts of St. Louis, including the place where Lackey was killed. Plaintiff also introduced Section No. 2386 of the Revised Code requiring cars going southward to stop on the north side of the intersection of streets, and those going northward to stop on the south side of the intersection of streets, when signaled or motioned to by anyone standing on the appropriate corners, desiring to board such cars. They also introduced Section 2380 of the Vigilant Watch Ordinance providing that each "motorman, gripman, driver or any other person in charge of each car shall

keep vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such person or vehicles the car shall be stopped in the shortest time and space possible.''

All of these ordinances and regulations were objected to by the defendant, and exceptions saved to their introduction.

The case was submitted to the jury on two specifications of negligence set up in the petition, first that the car which caused the accident was running in excess of the speed limit of fifteen miles an hour, and, second, the failure of the motorman in charge of the car to stop the car or check its speed after he saw, or by the exercise of ordinary care could have seen, Lackey in time to have done so.

Defendant introduced no evidence but demurred to plaintiff's evidence, which demurrer was overruled, and a verdict for $10,000 in favor of plaintiff resulted The evidence is set out at some length because one main assignment of error is to the action of the court in overruling the demurrer to the evidence.

I.   It is conceded that the defendant was negligent in operating at an excessive rate of speed the car which caused the death.   It is argued that the demurrer should have been sustained because the evidence conclusively showed Lackey's own negligence contributed to the fatal injury.   Appellant relies upon the rule, established in many cases, that one who is about to go upon a railroad track or a street railway track owes a duty to himself to look and listen; he must have a care for his own safety.   If he goes upon the track in front of an approaching car when the exercise of ordinary care would prevent injury he cannot recover for the injury caused by collision with such car. [Keele v. Railroad,

*Demurrer to Evidence: Contributory Negligence: Crossing Street Car Tracks: Presumptions.*

258 Mo. l. c. 80; Rollison v. Railroad, 252 Mo. l. c. 542-3; Gubernick v. United Railways Company, 217 S. W. l. c. 35; Schmidt v. Railroad, 191 Mo. l. c. 229; Laun v. Railroad, 216 Mo. l. c. 578.]   The rule that one injured or killed under such circumstances is presumed to have been in the exercise of ordinary care, in the absence of evidence to the contrary, is conceded by the appellant. [McKenzie v. United Rys., 216 Mo. l. c. 22.]   But it is urged that it has no application here because, appellant asserts, the facts in relation to the incident all are clearly shown. When the facts appear as to how such a collision happened there is no room for a presumption. [Burge v. Railroad, 244 Mo. l. c. 94; Tetwiler v. Railroad, 242 Mo. l. c. 194; Higgins v. St. L. & Sub. Ry. Co., 197 Mo. l. c. 317.]   Many other cases of like import are cited.

To say that one injured under such circumstances is presumed to be exercising ordinary care is but another way of saying contributory negligence is an affirmative defense and must be proven in order to be available to the defendant.   Since the defendant introduced no evidence we must examine the facts to see whether the plaintiff's own evidence shows conclusively that Lackey was negligent.   It will be noted that from the time he stepped off the walk by the drug store until he was on the track immediately in front of the car which struck him, he was not seen by anybody who testified.   The distance between those two points may be approximately determined from the figures given.   Starting at that point he had to go eight or ten feet, to the sidewalk on Plymouth avenue, then across the west track five feet, and the space of four and a half feet between the tracks, and go on to the east track, a total distance of about twenty feet.   That would have been his most probable course.   He might have reached the point by going diagonally across from where he first stepped off the walk, but in that case he would have crossed the ditch between the two tracks, three and a half feet wide and

eighteen inches deep. He certainly was not negligent in anything he was seen to do at the time he stepped off the walk. He was walking slowly, looking down, as the witness stated, to see where to put his foot. Nothing in his attitude indicated lack of care.

When he was next seen he was on the track, five, fifteen or twenty feet, according to the different witnesses, in front of the approaching car. He seemed to discover the car about the time the witnesses saw him, and, from testimony, was confused by the sudden discovery of the car so close. The mere instant's hesitation was fatal to him. He first appeared to start back and then jumped upward to save himself by jumping on the fender. His action indicates such excitement and confusion as for the moment to deprive him of quick and rational action. It is possible, with the car fifteen or twenty feet from him, that he might have jumped to one side and escaped, but he certainly was not negligent in failing to do that, in the confusion of the moment. On that proposition the authorities are unanimous. Some men are slower than others to think. The ordinary individual, in sudden emergency, is incapable of instant action. To save himself then required instant action, which he seemed unable to take in the right direction. No one knows how he got on the track. It can't be presumed that he intentionally walked on the track in front of the approaching car which he saw, or readily could have seen. He may have stumbled on the track accidentally.

Other circumstances also must be taken into consideration; circumstances which do not appear in cases relied upon by appellant as showing contributory negligence on the part of one who voluntarily steps in front of an approaching car or train. The car was running at the rate of thirty miles or more, an hour—twice as fast as the speed limit permitted. If Lackey saw the car one hundred and fifty feet away when he started across the right of way, he had a right—in the absence of any

notice or knowledge to the contrary—to assume that it was traveling within the speed limit. [Powers v. Transit Co., 202 Mo. l. c. 280; Harrington v. Dunham, 273 Mo. 414, l. c. 423; Moon v. St. Louis Transit Co., 237 Mo. l. c. 430, et seq.; Eckhard v. St. Louis Transit Co., 190 Mo. 593, l. c. 617; Riska v. Union Depot R. R. Co., 180 Mo. l. c. 191; Strauchon v. Met. Street Ry. Co., 232 Mo. 587, l. c. 600-601.] He might very well misjudge the speed of the car seeing it as it came head on. It has been said by this court to be a matter of common knowledge that one seeing a running car at an acute angle—for instance, from the front,—is not nearly so well able to judge of its speed as one viewing it from the side. [Strauchon v. Met. St. Ry. Co., 232 Mo. l. c. 599.] Furthermore, it was the duty of the motorman of the approaching car to stop on the south side of Plymouth avenue, because it was a regular stop, and he was signalled to stop by Hadley who sought passage. If Lackey saw the car approaching, as appellant asks us to assume, we might as well assume that he saw Hadley's signal to the car to stop. The cases in the last group cited discuss the assumptions upon which one approaching a track may rely under varying conditions. Lackey had a right to assume that the approaching car was running within the speed limit and that it would stop on the other side of the street, and to act upon the assumption, unless he knew to the contrary. In either case he could have crossed in safety, and was not negligent in attempting to do so. Appellant cites the case of State ex. rel. Peters v. Reynolds, 214 S. W. 121, recently determined by this court, in which one crossing a railroad track was killed, and was not seen from the time he started to cross the track a little distance away until after he was hit. It was held by this court, approving the ruling of the St. Louis Court of Appeals that the plaintiff was negligent as a matter of law, because if he had looked he must plainly have seen the approaching train, and he was negligent if he failed to look. Other cases might be cited where recovery has been denied on account of contributory negli-

gence, although the party injured or killed was not seen
for a brief interval between the fatal collision and where
he was previously at some point of safety.   In all of
these cases the right to assume the approaching train
or car was running at a given speed, or would stop, is
entirely absent.   This court in case of State ex rel. Peters
v. Reynolds, supra, said, l. c. 123, in distinguishing the
cases where such assumption was allowed:

"In all those cases some specific violation of duty or
of a custom by defendant company is considered, and it
is held that a pedestrian may presume and act upon the
presumption that there will be no such violation, but that
the usual and regular, or prescribed, method will be fol-
lowed.

"Also in each of such cases there was an absence of
actual knowledge of the failure of duty; that is, the pe-
destrian who acted upon such presumption either could
not see or hear the approaching train, or was in such
position that he would likely misjudge its rate of speed."

The court then points out that the facts in that case
did not show the deceased had reason to believe that the
train would run at a rate of speed less than that at
which it was running.

The facts in this case come clearly within the ex-
ception noted here.   Here Lackey did have reason to be-
lieve the car would run at a particular rate of speed.
He did have reason, if he saw the car at all, to believe
that it would stop.   He had a right to rely upon the ob-
servation by defendant of a duty which its regulation
and the city ordinances required it to perform.

Several witnesses swore to the loud ringing of the
bell without placing the distance of the car at the time.
There is substantial evidence to show that the bell rang
by the time it got within fifty feet of Plymouth avenue,
and only rang again, very violently, about the time the
front end of the car reached the middle of Plymouth
avenue.   That violent ringing must have occurred about
the time Lackey discovered the car and became too con-
fused to jump off the track.   If he saw the car when it

was an hundred and fifty feet south of Plymouth avenue, it was then in the neighborhood of two hundred feet from him. If it was going at fifteen miles an hour, or twenty-two feet per second, he would have had at least six seconds in which to cross the track ahead of it. He could easily have done that at an ordinary walk. There is no view of the evidence which would authorize a conclusion of law that he was so negligent as to bar recovery.

II. The case was submitted both on the negligence of defendant in running its car at an excessive rate of speed, and on the last chance doctrine. Appellant is correct in its argument that the motorman, even if he saw Lackey approaching the track, had a right to assume, until a different intention was apparent, that he would use due care for himself and would not step in front of the car. The absence of evidence considered in the previous paragraph to show Lackey was not necessarily negligent applies to the question considered here. There is no evidence whatever as to when or how Lackey stepped into the dangerous position, or indicated an intention to do so. The motorman was not negligent in failing to observe the last chance rule at any particular period until Lackey was in danger, or apparently going into danger. The evidence showed the car, at the rate it was running, could not have been stopped in less than one hundred and fifteen or one hundred and twenty feet. In order to permit the submission of the question as to whether it could have been stopped or checked sufficiently to avoid injuring Lackey, it would have been necessary to show that at some particular time before the immediate contact he was going into danger and was oblivious of his peril, so that the motorman could have seen him in time to act. [Knapp v. Dunham, 195 S. W. 1062; Rubick v. Sandler, 219 S. W. l. c. 406; Schmidt v. Railroad, 191 Mo. 215; Keele v. Railroad, 258 Mo. l. c. 79.] It might be inferred from the fact that

*Negligence: Last Chance Doctrine: Discovery of Peril.*

the bell began to ring violently at the middle of Plymouth avenue, that the motorman at that time discovered him in a position of peril, or in the act of going upon the track; but there is no evidence that he might have discovered such peril sooner because there is no evidence that Lackey was in peril sooner than that. Then it was too late to stop the car or even sensibly check its speed. It was, therefore, error for the trial court to submit to the jury the issue whether the car might have stopped in time to avoid injury after the discovery of, or the opportunity to discover, Lackey's peril.

III. Appellant claims that the statute under which this suit was brought, Section 4217, Revised Statutes 1919, is penal so far as two thousand dollars of the recovery provided is concerned, and compensatory as to the remainder of recovery up to ten thousand dollars, and, since the petition alleged no facts showing pecuniary loss, recovery should have been limited to $2,000.

R. S. 1919, sec. 4217: Penal Statute: Pleading Pecuniary Loss.

In the well-considered case of Grier v. Kansas City Electric Railway Co., 286 Mo. 523, the Court in Banc at the present term held that the section is penal as to the entire amount recoverable, and allowed a verdict under the section for $10,000 to stand, though there was no pleading or proof of pecuniary loss. There was no error in permitting recovery for the full amount.

Another question arising in this connection is whether evidence of pecuniary loss to the widow by reason of her husband's death, in an action under that section, is admissible if not pleaded. Evidence was admitted, over defendant's objection, to show the earning capacity of Lackey, and his life expectancy.

The amount awarded in such an action, between the limits of $2000 and $10,000, is "in the discretion of the jury." Of course the jury must have facts upon which to base an estimate fixing the amount of penalty to be imposed. It is held in the Grier case that evidence show-

ing circumstances of aggravation and pecuniary loss may be admitted for the purpose of furnishing the jury such information, although the jury has authority to award the full amount without such evidence.

The cases construing the compensatory sections, 4218 and 4219, in regard to the admissibility of such evidence, throw little or no light on the question. [Johnson v. Mining Co., 171 Mo. App. 134; Rollinson v. Lusk, 217 S. W. 328, 1. c. 332; Smelser v. Railroad, 262 Mo. 25, 1. c. 42.]

There is no reason why in a suit under a penal statute the ordinary rules of pleading should not apply as well as under a compensatory statute, including the rule that every fact constituting a cause of action should be stated. [Section 1220, R. S. 1919; Pier v. Heinrichoffen, 52 Mo. 1. c. 336.] That means not only facts necessary to a recovery, but facts affecting the amount of recovery. Evidence of special damages cannot be admitted to enhance a verdict unless pleaded. For like reason, where the jury is required to exercise discretion in fixing the amount of a penalty, they should consider the evidence which would affect the result, as held in the Grier case. In order to meet such evidence the defendant has a right to be apprised by the pleading that it will be offered. Unless the petition states facts in general terms from which the aggravating circumstances that would increase the penalty may necessarily be inferred, such circumstances should be pleaded, just as special damages must be pleaded in a suit for compensation. It is suggested in some of the cases cited above that an allegation that plaintiff was the wife of deceased is a sufficient averment of pecuniary loss, because the law requires him to furnish her support. But it by no means follows, as a necessary inference, because the law requires a man to support his wife that he *does* support her; very often it is quite the contrary and the death of the husband may be to the widow a large pecuniary gain.

288 Mo.—10

From the holding in the Grier case that such evidence is admissible for the purpose of giving the jury facts upon which to fix the amount of the penalty to be imposed, it is a reasonable conclusion that such facts should be pleaded.

IV. Appellant assigns error to the giving of instruction number one on behalf of the plaintiff because it does not require a finding by the jury that the alleged negligence of the defendant was the proximate cause of the injury. The first part of the instruction, after requiring a finding as to the facts in relation to the collision and the death, and the ordinance limiting the speed of the car, proceeds:

*Instruction: Negligence: Proximate Cause.*

"If you further find from the evidence that at the time the deceased was struck by the car it was being run at a speed greater than fifteen miles an hour and the deceased was exercising ordinary care for his own safety, then the defendant would be liable in this action and your verdict should be for the plaintiff."

No other negligence is required to be found in the instruction and nothing appears except the above quoted passage, as to the effect of such negligence. Negligence is not actionable unless it produces an injury. In such cases it is always necessary to *prove* that the negligence complained of is the proximate cause of the injury which results. An instruction authorizing recovery in such case must require such a finding. [King v. Railroad, 143 Mo. App. 279, l. c. 297; Battles v. Railways Co., 178 Mo. App. l. c. 614; Tranbarger v. Railroad, 250 Mo. l. c. 58.] Where the jury is required to find facts from which a necessary inference follows that the negligence found was the cause of the injury, it is sufficient. [State ex rel. v. Ellison, 208 S. W. 443; Sutter v. Metropolitan Street Ry. Co., 208 S. W. 851.] The instruction in this case, however, does not require a finding of specific and definite facts from which an inference necessarily follows that the negligence, if

found, was the cause of the injury, nor was there any other curative instruction given in the case. It was entirely possible for the jury to find that the defendant was negligently exceeding the speed limit; that Lackey was exercising due care for his own safety, and yet find that the negligence of the defendant was not the cause of the death; it might have been purely accidental.

The instruction is erroneous, also, for another reason. It is in the alternative, and in addition to the part quoted above authorizes a verdict for plaintiff, not only on account of the excessive speed, but also under the humanitarian rule. It was error to submit the latter alternative, as we have seen above.

V. The vigilant watch ordinance was admitted in evidence over the objection and exception of defendant. It was not pleaded in the petition as a ground of recovery, and its admission was error. [Weisberg v. Boatmen's Bank, 280 Mo. 199, 217 S. W. l. c. 86; Peterson v. United Rys. Co., 270 Mo. l. c. 74; State ex rel. v. Oddle, 42 Mo. 210; Keane v. Klausman, 21 Mo. App.

Municipal Ordinance Not Pleaded: Incompetent Evidence.

485.] Under some circumstances its admission may be harmless, though not pleaded, because it is declaratory of the common law, but since the case is to be retried we need not discuss that distinction.

VI. The plaintiff introduced an ordinance which provided that cars should stop on the near side of the street and that it should be the duty of the motorman, or other servant running the car, to bring the car to a full stop at the corner of the street as provided, whenever signaled or motioned to by any person standing on such corner desiring to board such car. This was

Contributory Negligence: Competent Evidence.

objected to by the appellant and error assigned to the action of the court in admitting it. The ordinance was admissible though not pleaded. The defendant's answer pleaded contributory negligence and defendant attempted to

show it in cross-examination of plaintiff's witnesses. It was then entirely competent for the plaintiff to prove any fact which would rebut evidence indicating such negligence. It was proper to show that the motorman was in duty bound to stop his car on the other side of the street. The ordinance was admissible for that reason.

For the reasons mentioned the judgment is reversed and the cause remanded. *Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur; *Higbee, P. J.,* in reversing, but dissents as to remanding.