FRANKLIN P. McDONALD, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals. Opinion Filed June 24, 1922

1. **STREET RAILROADS: Negligence: Driver Crossing Tracks: Contributory Negligence: Evidence: Question for the Jury.** In an action for damages against a street car company growing out of a collision at a street crossing, where the evidence shows that plaintiff, driving a horse and wagon, attempted to cross the car tracks after he had looked and saw the street car coming about 600 feet away and knew that it was approaching a crossing where people were standing apparently in a position indicating that they intended to become passengers on the car, such facts and circumstances should be taken into consideration in determining the question of plaintiff's contributory negligence, and, when this is done, plaintiff should not be declared guilty of contributory negligence as a matter of law.

2. **APPELLATE PRACTICE: Demurrer to Evidence: Verdict for Plaintiff: Evidence: Viewed on Appeal Most Favorable to Plaintiff.** On appeal in passing upon a demurrer to plaintiff's evidence, the evidence after verdict must be viewed in the light most favorable to plaintiff.

3. **STREET RAILROADS: Negligence: Vigilant Watch Ordinance: Humanitarian Rule: Evidence: Question for the Jury.** Where plaintiff was injured by being struck by one of defendant's street cars at a street crossing, evidence reviewed and *held* to justify the refusal of the trial court to withdraw from the consideration of the jury the alleged acts of negligence with respect to the vigilant watch ordinance and the humanitarian rule.

4. **INSTRUCTIONS: None Asked for Plaintiff: Defining Issues: Permissible: Not Commendable.** While plaintiff, in an action for per-

sonal injuries, took chances in submitting the case to the jury without offering instructions defining the issues, and it is a practice not commendable, yet plaintiff had the right to take such chances, if he so desired, and submit his case without offering any instructions.

5. ———: ———: **Plaintiff Entitled to Go to Jury on All Assignments of Negligence: Instruction on Measure of Damages Not Erroneous.** In an action for damages for personal injuries alleged to have been sustained by plaintiff by being struck by one of defendant's street cars at a crossing, an instruction for plaintiff, given by the court of its own motion as to the measure of damages, permitting and directing the jury to consider "all the facts and circumstances in evidence" in arriving at their verdict, *held* not reversible error in view of the fact that plaintiff was entitled to go to the jury on all of the assignments of negligence in the petition.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*Charles W. Bates, T. E. Francis* and *Vance J. Higgs* for appellant.

(1.) The court erred in refusing to give the jury the instruction to find for defendant, requested by defendant at the close of plaintiff's case and at the close of the whole case, for the reason that plaintiff was not entitled to recover under any theory of negligence counted on in his petition. (a) Plaintiff was not entitled to recover under the Last Chance Doctrine. Burge v. Railroad, 244 Mo. 76; Quinley v. Springfield Traction Co., 165 S. W. 346; Fleming v. Railroad, 263 Mo. 180; Keele v. Railroad, 258 Mo. 62; Paul v. Railroad, 152 Mo. App. 577; Zurfluh v. Peoples Railway Co., 46 Mo. App. 636; Baecker v. Railroad, 240 Mo. 507; Hamilton v. Railroad, 250 Mo. 714; McGee v. Railroad, 214 Mo. 530; Roenfeldt v. Railroad, 180 Mo. 554; (b) Plaintiff was not entitled to recover under the Vigilant Watch Ordinance. Gubernick v. United Rys. Co., 217 S. W. 33. (c) 1. Plaintiff was not entitled to recover under the specification of negligence charging

plaintiff with operating the car which collided with plaintiff in excess of fifteen miles an hour. Alexander v. Railways Co., 233 S. W. 49; King v. Wabash Ry. Co., 211 Mo. 13; Burton v. Pryor, 198 S. W. 1121; Battles v. Railroad, 178 Mo. App. 615; Schmidt v. Railroad, 191 Mo. 215; Green v. Railroad, 192 Mo. 131; Laun v. Railroad, 216 Mo. 563; Moore v. Railway, 176 Mo. 544; Burge v. Railway, 244 Mo. 76; Jackson v. Railway, 157 Mo. 645; Weller v. Railroad, 120 Mo. 635. 2. The evidence of plaintiff, tending to show that the car was operated at a speed of thirty-five miles an hour, did not warrant a recovery by plaintiff, for the reason that this dereliction was not the proximate cause of the collision, the proximate cause of said collision being the act of plaintiff in driving said dray wagon on the track, without looking, when he knew a car was approaching on said track at a speed of thirty-five miles an hour. Moore v. Railway Co., 176 Mo. 544; Battles v. Railroad, 178 Mo. App. 614; Schmidt v. Transit Co., 140 Mo. App. 182; King v. Railroad, 211 Mo. 1; Warner v. Railroad, 178 Mo. 125; Kelley v. Railroad, 75 Mo. 138. Negligence not proximately causing the injury compained of is not actionable. State ex rel. v. Ellison, 176 S. W. 11; Jackson v. Butler, 249 Mo. 342. (d) The contributory negligence of plaintiff bars a recovery by plaintiff under every theory of primary negligence. State ex rel. v. Reynolds, 233 S. W. 219; Evans v. Illinois Central Railway Co., 233 S. W. 397; Alexander v. Railroad, 233 S. W. (Mo. Sup.), 44; Burge v. Railroad, 244 Mo. 75. Gubernick v. Railroad, 217 S. W. 33; McCreery v. Railroad, 221 Mo. 18; Owens v. Railroad, 188 Mo. App. 450; Sanguinette v. Railroad, 196 Mo. 466; Hayden v. Railroad, 124 Mo. 566; Haggart v. Railroad, 154 Mo. 673; Kelsay v. Railroad, 129 Mo. 362; Costello v. Railroad, 213 S. W, 179; Voelker Products Co. v. Railroad, 185 Mo. App. 310. (2) Instruction number eight is erroneous in that it directed the jury to consider all the facts and circumstances in evidence in arriving at its verdict. Boyd v. Transit Co., 108 Mo. App. 303; Kohr v. Railway Co., 92 S. W. 1145;

Allen v. Transit Co., 183 Mo. 411. (3) The court erred in refusing to give the jury instruction D, requested by defendant, as plaintiff was not entitled to recover under the Last Chance Doctrine. Alexander v. Railroad, 233 S. W. (Mo. Sup.) 44; Quinley v. Springfield Traction Co., 165 S. W. 346; Burge v. Railroad, 244 Mo. 76; Fleming v. Railroad, 263 Mo. 180; Keele v. Railroad, 258 Mo. 62; Paul v. Railroad, 152 Mo. App. 577; Zurfluh v. Peoples Railway Co., 46 Mo. App. 636; Baecker v. Railroad, 240 Mo. 507; Hamilton v. Railroad, 250 Mo. 714; McGee v. Railroad, 214 Mo. 530; Roenfeldt v. Railroad, 180 Mo. 554. Where plaintiff is not entitled to recover under an assignment of negligence pleaded in the petition, the failure of the court to give an instruction requested by defendant, withdrawing such assignment, is reversible error. Roseman v. United Rys. Co., 194 S. W. 1088; Allen v. Lumber Co., 171 Mo. App. 492; Chicago etc. Ry. Co. v. Kroloff, 217 Fed. 525. (4) The court erred in refusing to give the jury instruction C, requested by defendant, withdrawing the assignment of negligence based upon a violation of the vigilant watch ordinance, for the reason that plaintiff's contributory negligence barred a recovery under this theory. State ex rel. v. Reynolds, 233 S. W. 219; Evans v. Illinois Central Railway Co., 233 S. W. 397; Alexander v. Railroad, 233 S. W. (Mo. Sup.) 44; Burge v. Railroad, 244 Mo. 75; Gubernick v. Railroad, 217 S. W. 33; McCreery v. Railroad, 221 Mo. 18; Owens v. Railroad, 188 Mo. App. 450; Sanguinette v. Railroad, 196 Mo. 466; Hayden v. Railroad, 124 Mo. 566; Huggart v. Railroad, 134 Mo. 673; Kelsay v. Railroad, 129 Mo. 362; Costello v. Railroad, 213 S. W. 179, 180; Voelker Products Co. v. Railroad, 185 Mo. App. 310; Tannehill v. Railroad, 279 Mo. 158; Boring v. Railroad, 194 Mo. 541; Where plaintiff is not entitled to recover under an assignment of negligence pleaded, the failure of the court to give an instruction requested by defendant withdrawing such assignment is reversible error. Roseman v. United Rys. Co., 194 S. W. 1088; Allen v. Lumber Co., 171 Mo. App. 492; Chicago etc.

Ry. Co. v. Kroloff, 217 Fed. 525. (5) The court erred in refusing to give the jury instructions A and B, requested by defendant, withdrawing assignments of negligence based on the common law and under an ordinance of the City of St. Louis. (a) Plaintiff, before going into the danger zone, saw the approach of the car and was cognizant of the fact that the same was being operated at a rate of speed far in excess of fifteen miles an hour. Alexander v. Railroad, 33 S. W. 49; King v. Wabash Ry. Co., 211 Mo. 13; Burton v. Pryor, 198 S. W. 1121; Battles v. Railroad, 178 Mo. App. 615; Schmidt v. Railroad, 191 Mo. 215; Green v. Railroad, 192 Mo. 131; Moore v. Railroad, 176 Mo. 544; Burge v. Railroad, 244 Mo. 76; Jackson v. Railway, 157 Mo. 645; Weller v. Railroad, 120 Mo. 635. (b) The speed at which the car was operated was not the proximate cause of the collision. Moore v. Railway Co., 176 Mo. 544; Battles v. Railroad, 178 Mo. App. 614; Schmidt v. Transit Co., 140 Mo. App. 182; King v. Railroad 211 Mo. 1; Warner v. Railroad, 178 Mo. 125; Kelley v. Railroad, 75 Mo. 138. Negligence not proximately causing the injury complained of is not actionable. State ex rel. v. Ellison, 176 S. W. 11; Jackson v. Butler, 249 Mo. 342. (6) The court erred in refusing to give the jury instruction H, requested by defendant, which said instruction directed the jury that if it found from the evidence that plaintiff saw that a street car was approaching, and knew the danger of being struck thereby, and knowingly attempted to drive his team across the street car tracks in question in such close proximity to a moving street car as to be struck before he could get across or off of said tracks, then the verdict must be for the defendant. Kinlen v. Railroad, 216 Mo. 145; Pope v. Railroad, 242 Mo. 232; Knapp v. Dunham, 195 S. W. 1062.

*Bass & Bass* and *I. Joel Wilson* for respondent.

(1) The court did not err in overruling the demurrer offered by the defendant at the close of plaintiff's

case. (a) In passing on a demurrer to plaintiff's evidence the court must consider the evidence introduced by plaintiff as true and make every finding and deduction in his favor which the jury-would have been warranted in making. Williams v. Kansas City Southern Railway Co., 257 Mo. 87; Strauchon v. Metropolitan Street Railway Co., 232 Mo. 587; Irvin v. United Railways Co., 196 Mo. App. 666; Clark v. St. Louis & Suburban Railway Co., 234 Mo. 396. (b) "It is a trite doctrine that in passing on a demurrer to the evidence the evidence must be viewed in the light most favorable to the plaintiff, giving him the benefit of every inference favorable to him which may be fairly and reasonably drawn therefrom. If there is room for reasonable men to differ with respect to the evidence, the case is one for the jury." Yost v. Atlas Portland Cement Co., 191 Mo. App. 422; Powers v. Transit Co., 202 Mo. 267; Morgan v. Orongo Circle Mining Co., 160 Mo. App. 99; Riley v. O'Kelly, 250 Mo. 647; Boeckmann v. Valier & Spies Milling Co., 199 S. W. 457; Cowan v. Young, 220 S. W. 869. (d) Plaintiff was entitled to recover under the Last Chance Doctrine. (e) The distance the car ran and was actually stopped after it struck the wagon, as shown by the testimony, is evidence tending to show in what distance it could have been stopped under the circumstances of this case, so as to have averted the collision. Beir v. St. Louis Transit Co., 197 Mo. 215; Ellis v. Metropolitan Street Railway, 234 Mo. 657; Petrie v. Metropolitan St. Ry. Co., 177 Mo. App. 359. (f) "The law is that if a motorman or engineer drives his car at such speed that he could not stop it if he came in sight of one who might be crossing over the track, he cannot excuse himself by showing his inability to stop by the utmost effort after he did see him. The reason being that his being unable to stop came about from his inexcusable negligence before he saw him. Williams v. City Elevated Railway Co., 149 Mo. App. 489; Koenig v. Union Depot Ry. Co., 173 Mo. 698; Klockenbrink v. Ry. Co., 172 Mo. 678; Moore v. St. Louis Transit Co., 194 Mo. 1; Epstein v. Ry. Co.,

197 Mo. 720; Murrell v. Ry. Co., 105 Mo. App. 88; Abbott v. Ry. Co., 121 Mo. App. 582. (g) Plaintiff was entitled to recover under the vigilant watch ordinance and contributory negligence is not imputable to a person for failing to look out for danger when under surrounding circumstances he has no reason to suspect any. Langan v. Railway Co., 72 Mo. 392; Hill v. Electric Light & Power Co., 260 Mo. 43; Buesching v. Gas Light Co., 73 Mo. 219; Crawford v. St. Louis Yards Co., 215 Mo. 394. (h) Plaintiff was entitled to recover under the specification of "negligence" charging defendant with operating the car which collided with plaintiff with running in excess of fifteen miles an hour even though the plaintiff committed an error of judgment in attempting to cross the track. Irwin v. United Railway Co., 196 Mo. App. 666; King v. Kansas City Rys. Co., 204 S. W. 1129; Heintz v. St. Louis Transit Co., 115 Mo. App. 667; Murray v. St. Louis Transit Co., 108 Mo. App. 501; Strauchon v. Metropolitan Street Railway Co., 232 Mo. 587. The evidence on part of plaintiff tended to show that the car of defendant was operated at a rate of speed from twenty-five to thirty-five miles an hour. This was negligence *per se*. Heintz v. St. Louis Transit Co., 115 Mo. App. 667; Strauchon v. Metropolitan Street Railway Co., 232 Mo. 587; Moritz v. St. Louis Transit Co., 102 Mo. App. 657. (i) It was not contributory negligence on part of plaintiff in crossing the intervening space between the east side of Union avenue and the car tracks upon which the car was running at a rate of speed believed by him to have been thirty-five miles an hour. This was not primary negligence. Howard v. Scarrit Estate Co., 267 Mo. 398; Moffatt v. Link, 229 S. W. 836; Alyea v. Junge Baking Co., 230 S. W. 341. (j) In personal injury cases unless this court can say as a matter of law no reasonably prudent man would have done as plaintiff did, then the question of plaintiff's contributory negligence is for the jury. Alyea v. Junge Baking Co., 230 S. W. 341. (2) The refusal of the court to give the instructions prayed for, by defendant, was not error. The

points were covered by the instructions given at the request of defendant, or there was no warrant in giving them under the evidence.

NIPPER, C.—This is an action for damages alleged to have been sustained by plaintiff by being struck by one of defendant's street cars, between five and six p. m., on January 28, 1918. The car was being operated over defendant's tracks on Union avenue, in the city of St. Louis. Plaintiff recovered judgment for $3000, and defendant appeals.

There were four assignments of negligence set out in the petition:

First. Negligently running and operating the street car at a careless, negligent, and dangerous rate of speed.

Second. Negligent operation of the street car in excess of fifteen miles an hour, in violation of a certain ordinance of the city of St. Louis.

Third. Negligent failure to keep a vigilant watch, as required by ordinance, and to stop the car in the shortest time and space possible upon the first appearance of danger.

Fourth. Negligent failure to stop the car or slacken the speed thereof, when defendant's motorman knew, or by the exercise of ordinary care could have known, that plaintiff was in a position and condition where he was likely to be injured.

The answer was a general denial, coupled with a plea of contributory negligence.

The reply was a general denial.

At the close of the plaintiff's case, defendant offered a demurrer, which was overruled. Defendant then introduced its evidence, and again offered a demurrer at the close of the whole case, which was also overruled.

No instructions were offered by plaintiff, and the only instruction for plaintiff was an instruction on the measure of damages given by the court of its own motion.

Plaintiff was driving a one-horse dray wagon north on the east side of Union avenue, over which the de-

fendant maintains two parallel tracks of its railway. The easternmost track was the northbound track, over which cars were operated going north. The track just to the west of this on the same street was the southbound track, over which defendant's street car was being operated at the time of the collision. The accident occurred at a point on Union avenue where it is intersected by Ashland avenue from the west. Ashland avenue does not cross Union avenue, and there is no street continuing east on the east side of Union avenue at this point.

On direct examination plaintiff testified, as stated, that he was traveling north on Union avenue, driving this one-horse dray wagon, at a point on said Union avenue somewhere between the center and the east curb. When he reached a point immediately east of Ashland avenue, and a few feet north of the south curb line of Ashland avenue, he turned his horse toward the west to drive across defendant's street car tracks to the eastern terminus of Ashland avenue. When he started to turn toward Ashland avenue, he says he looked to the north and saw the street car coming about six hundred feet away, and at a rate of speed estimated by him to be thirty-five miles an hour. He testified that he had operated street cars, and knew the rate of speed at which this car was coming.

It appears from the testimony of other witnesses, as well as plaintiff, that from twenty to thirty feet north of the northwest corner of Ashland and Union avenues, there were two or three parties standing on the street at a point where the street car would stop to take on passengers. It appears, however, that the car did not stop at that point, and in fact it was not stopped from the time plaintiff saw it until after he was struck.

When plaintiff's horse had crossed over the southbound track, and while the wagon on which plaintiff was riding was on said track, the street car struck the wagon, breaking the shafts, knocking the same loose from the horse, and throwing plaintiff some fifty feet to the south before he struck the ground. No point is made here that

plaintiff did not receive injuries, or that the verdict is in anywise excessive. It therefore becomes unnecessary to set out the testimony with respect to his injuries.

Plaintiff said that when the car was six hundred feet away, he was in the act of crossing the street at the time.

There is an incline from the point at which plaintiff said he first saw the car near Natural Bridge road, to Ashland avenue—the point at which plaintiff was struck, plaintiff stating that it was about seven feet higher at Natural Bridge road than at Ashland avenue where the collision occurred, it being up grade from Ashland avenue to Natural Bridge road. Other witnesses placed the incline at fifteen degrees. There was snow on the ground at the time, which had become partly melted.

Robert Punshon, witness for plaintiff, testified that he was riding on the street car in question near the front end of the car and immediately behind the motorman at the time of the accident. He fixes the speed of the car at thirty miles per hour, and the incline from Natural Bridge road to Ashland avenue at fifteen degrees. He says that after the car left Natural Bridge road on its journey southward, the motorman turned around toward him as he neared the parties who were standing on the street corner, and exclaimed:

"I am going thirty miles an hour; I can't stop here."

At the time the motorman made this exclamation, the street car was evidently seventy-five or one hundred feet north of the point where the collision occurred. He fixed the point where the car stopped at one hundred feet south of Ashland avenue. This witness first saw the wagon as the street car was passing the people standing on the street. He says the motorman made no effort to stop the car until just as it collided with plaintiff's wagon.

John M. Bretz, another witness for plaintiff, testified that he was on the street car at the time of the accident, sitting near the front end of the car, and about four feet directly behind the motorman. He fixed the

rate of speed at which the car was going at twenty-five miles an hour "or better." He testified that when he saw plaintiff turn across to Ashland avenue, the car was approximately two hundred feet north; that he noticed the people on the curb twenty or thirty feet north of Ashland avenue step out toward the car as it approached; that the surface was covered with snow and "very slick." He says that immediately prior to the time the car struck the wagon, the motorman went through many motions, putting on emergencies, and shutting off the air. He says the motorman did not get the car stopped until it was one hundred or two hundred feet past where he had struck the wagon. This witness also fixes the incline at fifteen degrees from Natural Bridge road to Ashland avenue. On cross-examination, he stated that about the time he first saw plaintiff turn to cross the track, two hundred feet away, the motorman began applying the brakes and shutting off the air. He later corrected this statement and said the motorman was only twenty-five or thirty feet away from plaintiff when he began to use appliances to stop the car.

Plaintiff offered in evidence certain ordinances of the city of St. Louis which were pleaded in the petition.

Joseph Schwent, who was conductor on the car at the time of the collision, testified on behalf of the defendant that the rails were very slippery on the occasion of the accident, and that the car was traveling about fourteen miles an hour. He did not see plaintiff before he was struck.

F. L. Roy, another witness for defendant, testified that he was on the car at the time of the collision. He fixed the speed at which the car was traveling at about fourteen miles an hour. He says he noticed the car slacken its speed before it hit the wagon, and that at the time it struck the wagon it was going "mighty slow."

Defendant offered separate withdrawal instructions, withdrawing from the consideration of the jury each and every assignment of negligence in plaintiff's petition. Defendant contends that the court erred in not giving

these withdrawal instructions, and in not sustaining its its demurrer to the evidence, it being contended that the speed of the car could not be the proximate cause of plaintiff's injury, and that plaintiff was not entitled to recover under the humanitarian doctrine, or the vigilant watch ordinance, because there was no evidence to show in what distance the car could have been stopped after plaintiff came into a position of peril, where he was seen, or by the exercise of ordinary care could have been seen by defendant's motorman.

## I.

Addressing our observation first to the negligent speed of the car as the proximate cause of the injury, it is apparent from the testimony of plaintiff and all his witnesses, that this car was being operated at a rate of speed twice as fast as is permitted by ordinance, and in a populous city where pedestrians and vehicles are likely to be crossing at any street crossing. Even if plaintiff did see the car coming, and even though he knew the rate of speed at which it was traveling, he knew that it was approaching a crossing where three people were standing apparently in a position indicating that they intended to become passengers on this car, and under such circumstances plaintiff might have inferred that the car would stop, and not dash on heedlessly and recklessly, in total disregard of the rights of others to the use of the streets, and injure him. Plaintiff, it is true, had no right to rely upon the fact that the car was being operated at a rate of speed within the ordinance, because he knew the facts, and knew that it was being operated, as he states, at thirty-five miles an hour; but he could have assumed, and it would be a reasonable inference that he did assume, that it would stop when it approached Ashland avenue to take on, as passengers, the parties waiting there, and to act upon that assumption until such time as he perceived that it was not going to stop, when it appears it was too late. [Lackey v. United Rys. Co., 288 Mo. 120, 231 S. W. 956, l. c. 961; Mason v. United Rys.

Co. (decided by our Supreme Court June 16th, but not yet officially reported.] When plaintiff saw the car he says it was 600 feet away, and under the facts of this case he cannot be charged, as a matter of law, with knowledge that the car would not stop. These facts and circumstances should be taken into consideration in determining the question of plaintiff's contributory negligence, and, when that is done, we do not think plaintiff should be declared guilty of contributory negligence as a matter of law.

In Mason v. United Railways Co., supra, the evidence disclosed that plaintiff saw persons at a street corner at a point where passengers board the cars. The car did not stop, but continued on past and injured plaintiff. Plaintiff did not testify that he relied upon the car stopping to take on passengers. Whether he did or did not, the record seems to be silent. But the court held that plaintiff could not be declared guilty of contributory negligence as a matter of law, and stated as one of the reasons therefor: ''That there were persons standing on the west side of Garrison avenue off of the sidewalk and on the street where passengers stand to take the street cars; that these people were looking west, apparently waiting to take the said eastbound car. From this circumstance, the inference of plaintiff might reasonably have been that they intended to take the street car approaching from the west, and that it would stop before it reached the crossing for them to do so.'' The defendant had a right to assume that plaintiff would exercise ordinary care for his own safety, and the plaintiff also had the right to assume that defendant would do the same. The duties of each were reciprocal.

## II.

Defendant contends its demurrer should have been sustained, or its withdrawal instructions given withdrawing from the consideration of the jury the alleged acts of negligence with respect to the vigilant watch ordinance and the humanitarian rule, because there was no evidence

tending to show in what distance the car could have been stopped after plaintiff came into a position of peril. Viewing this evidence in the light most favorable to plaintiff, as we must after verdict, we find from the testimony that the car was stopped after it struck plaintiff, about one hundred feet south of Ashland avenue. One witness testified that no effort was made to stop the car until just as it struck plaintiff, about twenty feet north of the south curb line of Ashland avenue. Another witness testified that the motorman began to stop the car when the car was twenty-five or thirty feet away from the plaintiff  Disregarding the testimony of the witness that no effort was made to stop the car until about the time it struck plaintiff, and considering only the testimony of the witness that the car was twenty-five or thirty feet north, which would be most favorable to the defendant, it will be observed that the car was stopped within the distance of one hundred forty to one hundred fifty feet. It appears from the evidence also that one witness at least observed plaintiff in a position of peril two hundred feet away. This would have given the motorman ample time to have stopped the car before plaintiff was injured. Under this state of facts, it was not necessary to show by expert testimony in what distance the car could have been stopped, because the evidence discloses that it was stopped within one hundred fifty feet from the time the motorman began to make efforts to stop it. Therefore there was no error in refusing to give the instructions offered by defendant withdrawing these assignments of negligence from the consideration of the jury. [Peterie v. Metropolitan Street Railway Co., 177 Mo. App. 359, 164 S. W. 254; Smith v. Kansas City Rys. Co., 208 Mo. App. 139, 232 S. W. 261, and cases cited.]

We granted a rehearing in this case, and upon such rehearing being had, defendant, among other things, seriously contended that there was no evidence showing that plaintiff was in a position of peril when the street car was two hundred feet away. In order that this matter may appear fully in the record, we set out the testimony

of witness Bretz with respect to this particular matter. We copy the following from the direct examination:

"Q. When did you first see Mr. McDonald? A. Saw him setting on the wagon on the east side of Union avenue south of Ashland. I saw the wagon and didn't pay any attention to it when I first saw it, just noticed a wagon coming north.

"Q. How far up the road were you then? A. Up around Natural Bridge road. I was standing in the front end, had nothing else to do but look out the front.

"Q. You observed him turning across the street when you were near Natural Bridge road? A. Yes, sir.

"Q. How far is Natural Bridge road from Ashland avenue, about? A. About five hundred feet, I would judge.

"The Court. (Q): Did you say at that time you saw him turning into Ashland or coming north? A. Not turning; coming north.

"Mr. Wilson (Q): Where were you when you saw him turn into Ashland avenue? A. When I saw him head across to cross Ashland we were about two hundred feet north of Ashland, approximately about that, I wouldn't state exactly, about that though when he was turning over the tracks.

"Q. Did you notice anyone standing in the street near Ashland avenue? A. I did.

"Q. Where were they standing? A. When I first noticed them they were on the curb 20 or 30 feet north of Ashland, on the curb. They stepped out towards the car as it approached.

"Q. Had they come to a standstill before the car got there? A. Walking out in the street is all I noticed, two or three people; I don't recall just how many, but there was two or three people there."

We also copy the following from his evidence on cross-examination:

"Q. About how far was he away from the street car when you first saw him? A. We were up at Natural

Bridge road; about leaving Natural Bridge road, and I seen a rig down there; a conveyance.

"Q. You watched him all the way along? A. No, sir; I didn't.

"Q. You stated, as I took down your answer, that your street car was about 200 feet away from him when he started to turn across? A. Something like that.

"Q. That would be your estimate? A. Yes.

"Q. At that time how fast did you say the street car was going? A. Oh, at the rate of about twenty-five miles an hour.

"Q. Twenty-five miles an hour? A. About that.

"Q. That would be your estimate? A. Yes, sir.

"Q. How did he turn; did he turn straight across? A. He turned to the left, headed west, going north, and he turned to the left going west.

"Q. That was about when you heard the motorman getting busy with all these appliances there? A. About that time; he was over in front of the car then. The car was coming down on him.

"Q. As he approached the track—well, how far away was he from the track when he started to turn? A. Away from which track, the west track?

"Q. The track he was hit? A. He was coming up east of the east track; in other words, east of the north-bound track. He turned across that and crossed over in front of the car.

"Q. Now, as he started to do that this car was about 200 feet away, coming twenty-five miles an hour; that your idea? A. It was quite a ways up the hill.

"Q. Then the motorman started to do all this work you told of? A. Not then; just previous to the time he hit him.

"Q. About how far away was he when he started that? A. About twenty-five or thirty feet.

"Q. Did you see this wagon starting to turn across the track? A. I noticed him when he was turning there.

"Q. Did you say anything to the motorman? A. Certainly not.

"Q. Did you think there was going to be an accident? A. Not at the time.

"Q. Did you think he was going to turn across the track? A. Do you want to know what I think?

"Q. No; I just want to know if you are thinking these things I am asking you, Mr. Bretz—and I ask the witness be instructed not to volunteer testimony except in reply to questions.

"The Court: Read the question.

(Previous question read.)

"A. I certainly did think he was, from the direction he had his horse headed."

We think it a perfectly rational inference that the jury may draw from the evidence above set out, that plaintiff was in a position of peril when the street car was two hundred feet away. It is not only a rational inference, but the positive testimony of witness.

### III.

Defendant also complains of error in the giving of the instruction on the measure of damages, which instruction is as follows:

"If the jury find for the plaintiff, in estimating and determining the measure of his damages you should take into consideration, in connection with all the facts and circumstances in evidence, the bodily pain and suffering and mental anguish, if any, endured by him and resulting from the injuries received; the character and extent of his injuries, and whether they are permanent in their nature; the extent, if any, to which he had been prevented and disabled by reason of his injuries from working and earning a livelihood for himself; his necessary expenses for medical attention in endeavoring to be cured, not to exceed the sum of $450; and may find for him such sum as in the judgment of the jury, under all the evidence in the case, will compensate him for the injuries received."

The error urged against this instruction is that it permitted and directed the jury to consider "all the facts and circumstances in evidence" in arriving at its verdict.

There were no other instructions given or requested by plaintiff. While plaintiff took chances perhaps in submitting the case to the jury without offering instructions defining the issues, and it is a practice not commendable, yet plaintiff had the right to take such chances if he so desired and submit his case without offering any instructions. [Wingfield v. Railroad, 257 Mo. 347, l. c. 360, 166 S. W. 1037. See, also, Powell v. Railroad, 255 Mo. 420, l. c. 457 and 458, 164 S. W. 628.]

On behalf of the defendant, the court gave several instructions.

In view of the fact that plaintiff was entitled to go to the jury on all the assignments of negligence in the petition, we do not think the giving of this instruction, in the form in which it was given, constitutes reversible error.

The Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.