THE STATE OF MISSOURI at the Relation of IVA ETHELYN HAYWARD, Relator, v. GEORGE F. HAID, WILLIAM DEE BECKER and SIMON G. NIPPER, Judges of the St. Louis Court of Appeals.—51 S. W. (2d) 79.

Division Two, June 10, 1932.*

---

*NOTE: Opinion filed at October Term, 1931, February 17, 1932; motion for rehearing filed; motion overruled April 8, 1932; motion to transfer to court en banc filed; motion overruled at April Term, June 10, 1932.

*Rendlen, White & Rendlen, Elmer O. Jones* and *Lane B. Henderson* for relator.

*Waldo Edwards, Wm. A. Diemer* and *Harry J. Libby* for respondents.

FITZSIMMONS. C.—This is an original proceeding by *certiorari* against respondents herein, as judges of the St. Louis Court of Appeals, to determine whether that court followed the last previous ruling of this court in announcing the law in a case in which relatrix herein is plaintiff and appellant and Charles P. Ham and Sarah A. Ham, his wife, are defendants and respondents. The style of the case is Hayward v. Ham et al., and the opinion of the St. Louis Court of Appeals is reported in 29 S. W. (2d) 243, to which reference is made. Relatrix states that the opinion of the Court of Appeals is in conflict with the opinion of this court in the case of Fuller v. Robinson, 230 Mo. 22, 130 S. W. 343, which is pleaded in the petition for a writ of *certiorari* as the last previous ruling of this court on a question of law in Hayward v. Ham, supra, and as such controlling authority therein.

The opinion of the Court of Appeals discloses that relatrix, Iva Ethelyn Hayward, sued Charles P. Ham and wife, the parents of her husband, for damages for the alienation of the husband's affections. She recovered a verdict for $7000, which the trial court set aside and granted a new trial upon motion of the defendants. The

order granting the new trial gave as a reason therefor that it was "upon the ground alone that the court admitted evidence offered by the plaintiff that was incompetent and prejudicial to defendants over the objections and exceptions of defendants' counsel made at the time." The Court of Appeals ruled that testimony concerning the "mower incident" was admissible. The opinion then states the proposition which these *certiorari* proceedings bring here:

"The second matter that the court seems to have had in mind in granting the motion for a new trial was the testimony of the plaintiff that her husband assigned, as his reason for leaving her, that 'my daddy will disinherit me if I don't go.'"

The Court of Appeals in its opinion then quotes at length from the testimony of relatrix. She testified that on a given day about two weeks before their separation, her husband returned to their home, took a seat and drew her to his lap. He wept and told her he had been talking to his parents. The opinion then proceeds:

"Q. Now tell what happened, what you said to your husband and what he said to you with respect to the state of his feelings toward you, if he made any statement with respect to that, one way or the other, and about staying with you or not staying with you, if such made, avoiding about any statement his mother or father made about his leaving or not leaving, if you can tell us what happened in a way? A. He told me, 'that he had to leave me.'"

The opinion next shows that out of the presence of the jury, relatrix made an offer of proof that, in this conversation, her husband said that his daddy told him that he had to leave her and that, if he did not, his daddy would disinherit him. Counsel for defendants objected to this statement for the reason that no statement by the husband to relatrix could bind the parents of the husband because made out of their presence and hearing, and is hearsay. The court stated its intention to permit relatrix to testify to everything said by her husband to her except statements which either of his parents, the defendant, had made to him. The opinion then quotes the following further testimony given by relatrix in the presence of the jury:

"Q. Miss Hayward, on this occasion you have been telling us about, did your husband tell you this, not say, because the court ruled out everything your husband may have told you his mother or father may have said, that we can't tell in testimony here, did your husband say anything about going away on this occasion when he pulled you down on his lap and he cried? A. Yes, sir, he says, 'I have got to go, my daddy—'

"Q. *Don't tell us that. A. I was not going to repeat what his daddy said, he said 'my daddy will disinherit me if I don't go.'*

"Defendants' counsel objects, move be stricken out, statement of conclusion as to what defendant, Charles Ham, is alleged to have said.

"THE COURT: The statement of the witness as given in this answer does not include any purported statement made by either defendant to the husband of the witness and by the husband reported to the witness, and necessarily reflects the mental attitude of the husband himself as the witness gathered it. Objection overruled.

"To which ruling of the court defendants then and there at the time excepted and still excepts.

"Q. Did your husband and you continue to talk about the matter of his going? A. Yes sir.

"Q. How long did you discuss that matter? A. Oh, about an hour I suppose.

"THE COURT: Just a minute, in ruling on that last objection, the court ruled that the answer given by the witness and objected to, is competent as bearing upon the question of the state of affection of the husband towards the wife at that time.

"To which ruling of the court defendants then and there at the time excepted and still excepts." (Italics ours.)

Upon the admissibility of this evidence the St. Louis Court of Appeals in its opinion reasoned and ruled as follows:

"The petition alleged that defendants told their son that if he did not leave plaintiff they would disinherit him, and the answer by the general denial put such allegation in issue, yet such allegation of the petition could not be completely proven by evidence that at most was an opinion or conclusion of the husband of the witness (Martin v. Traveler's Ins. Co. (Mo. App.), 247 S. W. 1024, loc. cit. 1030; Baker v. Keet-Rountree, 318 Mo. loc. cit. 987, 2 S. W. (2d) 733, 3 S. W. (2d) 1003), or, if put in the words of the allegation of the petition, would be mere hearsay. [St. Louis Union Trust v. Little, 320 Mo. 1058, 10 S. W. (2d) 47, loc. cit. 50; Johnson v. Martindale (Mo. App.), 288 S. W. 970, loc. cit. 971; Clay v. Walker (Mo. App.), 6 S. W. (2d) 961, loc. cit. 963.] If a reason had been assigned in the testimony of either of the defendants why their son left the plaintiff, she would, in rebuttal, have been entitled to show a state of facts to overcome such testimony. But that is not the case here. The testimony here in question went in on plaintiff's case in chief, over objection, and no reason whatever was assigned by either of the defendants why plaintiff's husband left her.

"(3) It is true that at the instance of defendants the court granted their Instruction D-10 to the effect that conversations between plaintiff and her husband, outside the presence of the defendants, were admitted in evidence solely for the purpose of showing the

state of mind, concerning the affections charged to have been alienated, and that the jury should not consider any such statements, if they were made, to determine or affect the decision of the jury on the question of whether defendants alienated the affections of plaintiff's husband, and that the jury should not consider any such statements as evidence of any facts or statements of the defendants or either of them; but the plaintiff had already testified that her husband came in, sat down by the stove, and pulled her down on his lap, caressed her, cried, stated he married her because he loved her, and that he still loved her. These were all statements regarding the state of affections between the parties, but we cannot see how his statement that he would be disinherited, if he did not go, tends in any wise to show affection. As we view that statement, it could tend solely to impress one with the idea that some communication must have been made by his parents to cause him to fear such result. We regard the admission of that evidence as extremely harmful because of the effect it must have had upon the minds of the jurors, especially in view of the allegation in the petition above referred to, which was read to the jury.

"(4, 5). The trial court is vested with a wide discretion in the granting of a new trial, and that discretion is not to be disturbed by an appellate court unless there has been a gross abuse thereof. [Honea v. Railroad, 245 Mo. l. c. 649, 151 S. W. 119; McCarty v. St. Louis Transit Co., 192 Mo. l. c. 401, 91 S. W. 132; Rodan v. St. Louis Transit Co., 207 Mo. l. c. 406, 105 S. W. 1061; Delaplain v. Kansas City, 109 Mo. App. 112, 83 S. W. 71.] In view of what we have said, we think the trial court wisely exercised its discretion in the granting of a new trial in this case."

Relatrix filed in the Court of Appeals a motion for a rehearing in which she contended that the testimony quoted above was competent to show the state of mind concerning the affections of her husband toward her at the time, and that the testimony was not offered, given or received as a statement made by the defendants. The motion for a rehearing also stated that the decision of the Court of Appeals was in conflict with Fuller v. Robinson, supra, which was cited as a controlling decision of the Supreme Court. The Court of Appeals overruled the motion for a rehearing, relatrix filed in this court her petition for a writ of *certiorari* and the writ was issued.

I. We shall rule first two motions. Respondents have moved to dismiss the proceeding upon the grounds that relator's abstract of the record did not bring up the record of the case sought to be quashed, it did not present the assailed opinion and did not properly abstract the return. The printed abstract sets out at large relator's

petition for *certiorari*. And this petition complies with our Rule 34 relating to *certiorari* to Courts of Appeals, for the petition is accompanied by what purports to be a true copy of the opinion complained of, also a copy of the motion for a rehearing and a copy of the ruling of the Court of Appeals on that motion. The first two grounds of complaint in substance are that the assailed opinion is not repeated in the printed abstract, independently of the first appearance therein of the opinion as an exhibit to relator's petition for *certiorari*. But the opinion is set out once at large in the printed abstract. It is presented to us also in the full transcript of the record and proceeding of the St. Louis Court of Appeals which the clerk of that court has filed in this court by way of return to the writ of *certiorari* herein. The sole question in this case for decision upon the merits is whether the Court of Appeals by its opinion acted in contravention of a controlling opinion of this court and thereby went beyond its jurisdiction. And relator's printed abstract of the record lays that opinion before us, together with the motion for a rehearing and the ruling thereon. Therefore it seems to us that the first two reasons for the motion to dismiss are not sound. Relatrix in effect confesses the third ground of the motion to dismiss by her motion for leave to amend the abstract of the record by inserting a recital of the issuance of the writ and of the return of respondents thereto. The omission is inadvertent and the ends of justice will be served best by overruling the motion to dismiss and by granting leave to amend as prayed, all of which is accordingly ordered.

II. Fuller v. Robinson, 230 Mo. 22, 130 S. W. 343, with which relator alleges the opinion of the St. Louis Court of Appeals in Hayward v. Ham, supra, is in conflict, was an action for damages by a husband for the alienation of the affections of his wife. This court in its opinion in that case said (130 S. W. l. c. 348):

"The defendant assigns as error the action of the circuit court in admitting a conversation between the plaintiff's wife and himself in the presence of Mrs. Brannon, his wife's mother, on the morning following the defendant's buggy ride with the plaintiff's wife in June, 1905. It will be noted that this conversation contained no reference to any word, act, or conduct of the defendant. It was admitted for the sole purpose of showing the state of the affections of the plaintiff's wife and her motive for taking the trip to Toledo, Ohio, at that time. The pith of this objection is that it was a statement made in the absence of defendant, and if there was any alienation it had already occurred. As to the first contention, the rule is stated by Greenleaf on Evidence, Sec. 102, to be: 'In

actions of criminal conversation, it being material to ascertain upon what terms the husband and wife lived together before the seduction, their language and deportment towards each other, their correspondence together, and their conversations with third persons are original evidence.' "

The court quoted from Wigmore on Evidence (1st Ed. Vol. 3, Sec. 1730) to the same effect and adds that the text of these authors is fully supported by Wright v. Tatham, 5 Cl. & F. 683, Gilchrist v. Bale, 8 Watts (Pa.) 356, 34 Am. Dec. 469, and Gaines v. Relf, 12 How. 535, 13 L. Ed. 1071. After reviewing cases which had been cited by defendant, the court, in Fuller v. Robinson, made this comment on the admissibility of conversations between husband and wife tending to show mental condition, state of feelings or motive (130 S. W. l. c. 349):

"We think this evidence was clearly competent under the exception to the hearsay rule for the purpose of showing the feelings or mental condition of plaintiff's wife, and her reason and motive for going to Toledo, shortly thereafter. [Edgell v. Francis, 66 Mich. 303, 33 N. W. 501; Rose v. Mitchell, 21 R. I. 270, 43 Atl., loc. cit. 68; Preston v. Bowers, 13 Ohio St. 1, 82 Am. Dec. 430; Roesner v. Darrah, 65 Kan. 599, 70 Pac. 597; Sexton v. Sexton, 129 Iowa, 487, 105 N. W. 318, 2 L. R. A. (N. S.) 708; Williams v. Williams, 20 Colo. 51, 37 Pac. loc. cit. 616; Ash v. Prunier, 105 Fed. loc. cit. 724, 44 C. C. A. 675.]"

Respondents urge that Hayward v. Ham is to be distinguished from Fuller v. Robinson on facts and pleadings and is not in conflict. It is settled law that "in order that the record of a Court of Appeals in a given case may be quashed by this court on *certiorari*, the opinion in such case must have announced some general principle of law contrary to the latest announcement of this court upon the subject, or on a given state of facts must have announced and applied some conclusion of law contrary to a conclusion of this court on a similar state of facts." [State ex rel. v. Reynolds, 214 S. W. 121]. To the same effect, see State ex rel. v. Haid, 324 Mo. 130, 22 S. W. (2d) 1045, and State ex rel. v. Allen (Mo. App.), 256 S. W. l. c. 1052. And this court exercises these broad powers as a phase of the super intending control given to it by the Constitution in the interest of uniformity of judicial decision and of harmony of the law "to the end that one doctrine of law and equity shall apply in all appellate jurisdictions." [State ex rel. v. Becker, 316 Mo. 865, 293 S. W. 783.]

Respondents contend that, in Fuller v. Robinson the opinion of this court states: "It will be noted that this conversation contained no reference to any word, act or conduct of the defendant," and that

the opinion of this court does not set forth what was the statement of the wife, objected to in that case. A careful reading of the statement of facts in Fuller v. Robinson warrants the inference that the conversation mentioned in the paragraph stating the law of the case was substantively as follows (130 S. W. 1. c. 346):

"On the succeeding Saturday night the plaintiff and his wife, in the presence of her mother, discussed defendant's attentions to her, and plaintiff told her that these visits should cease, to which the mother agreed. But the plaintiff's wife did not agree to this, but thought that defendant ought to be welcome at any time."

It is true that that conversation is said to have taken place on a Saturday night instead of morning and before instead of after the wife's buggy ride with defendant. But the statement discloses that immediately after the conversation and buggy ride, Fuller "arranged for his wife to go East to visit some relatives in order that she could get from under the defendant's influence. He bought her a round-trip ticket to Toledo, Ohio, and back to Joplin." The opinion does not make mention of any other conversations between Fuller and his wife at which Mrs. Fuller's mother was present or from which the mother was absent. The version here given of what was the conversation meant by the court in Fuller v. Robinson is fortified by the examination by the court in its opinion of the further objection that the conversation was incompetent because the alienation had already occurred. An objection which was clearly based on the conversation itself and on incidents that occurred before and after it.

The opinion in Fuller v. Robinson narrates that before the conversation in question defendant Robinson, a man of means and leisure, was making clandestine visits to Fuller's wife at her home, while Fuller toiled as a clerk in an office early and late. Fuller found Robinson making one of these visits the day before the conversation in question. Yet this court, in its ruling, commented that there was no reference to any word, act or conduct of the defendant, Robinson, in a conversation out of his presence between Fuller and wife in which Fuller discussed Robinson's attentions to her and told her that these visits would have to stop.

We are of opinion that the St. Louis Court of Appeals on a given state of facts announced and applied in Hayward v. Ham, supra, a conclusion on the law of evidence contrary to the conclusion of this court in Fuller v. Robinson, supra, on a similar state of facts. In support of this view we observe: We have quoted from the opinion of the Court of Appeals in Hayward v. Ham, supra, the conversation between the husband and wife which is under examination and we have summarized the facts and quoted the state-

ments of law in the opinion of this court in Fuller v. Robinson. We have noted that respondents urge that the facts are not the same. That there is a similar state of facts in the two cases is made more obvious by reference to Hardwick v. Hardwick, 130 Iowa, 230, 106 N. W. 640, which this court cited and quoted with approval in Fuller v. Robinson, as a case involving the same principles of law applied to a similar state of facts. The Hardwick case and the instant case are so similar that we quote the references of this court to the Hardwick case in Fuller v. Robinson, 230 Mo. 22, 130 S. W. 343, 348:

"In Hardwick v. Hardwick, 130 Iowa, 230, 106 N. W. 640, the plaintiff was allowed to testify to her husband's statement to her that his father, the defendant, wanted him to leave her, and she was allowed to describe his feelings at the time of making this statement. The Supreme Court said: 'The nature of this issue is such that it was not only proper to show the declarations and act of defendant in respect to his son's marriage relation, but also to show the effect of these upon the son; that is, the state of the husband's mind towards his wife in consequence of defendant's conduct, and the way such conduct caused him to treat his wife. . . . In Westlake v. Westlake, 34 Ohio St. 621, 32 Am. Rep. 397, the declaration held to have been improperly admitted was the naked statement to the third party that defendant was doing all he could to separate her from her husband. It was in no way connected with anything indicating his mental attitude, and was clearly hearsay.' We might add that this conversation in the last-cited case was plainly not admissible, because it was the declaration of a husband as to the acts and conduct of the defendant, and was not a declaration tending to show mental condition or the state of the affections of the husband himself."

The opinion of the Supreme Court of Iowa in the Hardwick case, in parts not quoted in the Fuller case, emphasizes the identity of the facts in the Hardwick case with the facts in the instant case and thereby the Hardwick case serves to put the instant case on all fours with the Fuller case. In the Hardwick case we read (106 N. W. 1. c. 639):

"After plaintiff had testified to the relations with her husband up to the time she refused to do the work for his brother, and had related that she went to her mother's house to wait until it should be ascertained what defendant concluded to do concerning the matter, she was asked, 'What did George say to you about that time in relation to his father, if anything? A. Why, he told me, of course, one night after we had retired, that his father wanted him to leave me. Q. Did that occur between you and George after you had retired at night? A. Yes, sir. Q. State what George's feeling

was at that time? A. His feelings were so greatly overcome with grief that he held me so tight in his arms that he couldn't tell me from weeping. It seemed impossible for him to tell me. . . . We didn't sleep any that night.' ''

After stating the objections made by defendant to this conversation, the Iowa Court said (106 N. W. 1. c. 640):

''The statement of George concerning his father's wishes is the particular matter to which exception is taken. But this was a part of the transaction described, and a declaration essential to give it character and meaning. It was proper to prove the state of affection existing between the husband and wife. Without this declaration, the scene described, the outburst of love and sorrow, would have had no signification. With it the extent of the affection of the one for the other was indicated in an impressive manner.''

Another point of similitude with the Hardwick case is the cautionary instruction which the opinion of respondents mentions in the instant case. Concerning evidence of the character under examination the Iowa Court, in its opinion, said (106 N. W. 1. c. 640):

''The consideration of such evidence should be strictly limited by the instructions to the determination of the state of affection between husband and wife, and of the effect of the influence on the mind of the spouse whose affections are said to have been alienated, and the jury especially cautioned not to consider it in deciding whether any such influence was in fact exerted.''

The failure of the trial court to give a sufficient cautionary instruction was one of the reasons for the reversal of the Hardwick case. But the opinion of respondents in Hayward v. Ham, supra, discloses that the trial court gave a proper cautionary instruction. We have drawn freely from the Hardwick case solely because the views there expressed were adopted by this court in the Fuller case, and because the statement of facts in the Hardwick case removes any reasonable doubt of the existence of a similar state of facts in the Fuller case and the instant case.

Respondents, in their opinion, state: ''but we cannot see how his (the husband's) statement that he would be disinherited, if he did not go, tends in any wise to show affection.'' The trial court as shown by respondent's opinion, declared the statement competent ''as bearing upon the question of the *state* of affection of the husband toward the wife at that time.'' We read in Fuller v. Robinson, 230 Mo. 22, 130 S. W. 1. c. 348, ''Wigmore on Evidence (1 Ed.) Vol. 3, Sec. 1730, says: 'The existence of an emotion, hatred, malice, affection, fear and the like is usually evidenced by conduct or by utterances indirectly indicating the feeling that inspires them. But a declaration directly asserting the existence of the emotion is admissible under the present exception, like a statement of any other kind

of mental condition.' " And it requires no great knowledge of human nature to say that, if the husband of relatrix lost his affection for her by the acts of others, he, in the transition state of his feelings, passed through trying forms of other human passions, not the least of which was fear. And the testimony is admissible as evidence of this transitory stage of alienation.

III. The Court of Appeals, in its opinion here under review, observes that "the trial court is vested with a wide discretion in the granting of a new trial and that discretion is not to be disturbed by an appellate court unless there has been a gross abuse thereof." We deem ourselves to be within the bounds of our powers in *certiorari* proceedings when we observe that judicial discretion varies in its degrees of latitude according to the subject-matter of its use. In some phases of a trial, the judge, in the exercise of his discretion, is controlled by no fixed rules, but may decide according to good sense and justice without close regard to precedents. In determining the qualifications of a witness, in allowing leading questions, admitting a confession, controlling the scope of cross-examination, limiting the number of witnesses and the like, the trial court has broad powers. But discretion in this sense of the word is by our law not conceded to any trial judge on points of evidence, except perhaps in *ex parte* and interlocutory proceedings. [1 Wigmore on Evidence (2 Ed.) sec. 16, p. 166.] The trial court in Hayward v. Ham granted a new trial for what it conceived to be errors in the admission of evidence. The Court of Appeals in its opinion directly ruled that one of the matters of evidence was properly admissible. But the opinion does not meet squarely the question of evidence which the other purported error raised. It falls back upon the wide discretion of the trial court in the granting of a new trial. This is beside the issue of admissibility, the limits of which are narrow and fairly well defined.

IV. For the reasons stated, it is ordered that respondent's record and judgment herein be quashed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.