State of Missouri at the relation of Alton Railroad Company and W. L. Slater, Relators, v. Hopkins B. Shain, Ewing C. Bland and William E. Kemp, as Judges of the Kansas City Court of Appeals.—143 S. W. (2d) 233.

Court en Banc, September 3, 1940.

*W. H. Meschede, Jack Denny, A. W. Walker* and *Charles M. Miller* for relators.

684

*Bagby & Pierce* and *Johnson & Bacon* for respondents.

ELLISON, J.—Certiorari to the judges of the Kansas City Court of Appeals, bringing up the record of that court in Brown v. Alton Railroad Co., 132 S. W. (2d) 713. The action was based on the wrongful death statute, for the negligent killing of plaintiff's husband in a collision between one of relator's motor trains and a trailer-truck carrying cattle, at a highway crossing in Marshall. The deceased was one of three passengers on the truck, the other two being another handler of the cattle and the truck driver. The cause was submitted to the jury on primary negligence in the violation of a speed ordinance of the City of Marshall governing the movement of railroad trains, and also under the humanitarian doctrine. Respondents' opinion does not state what defenses were pleaded in relator's answer, but does disclose the pleadings were sufficient to put in issue charges of defendant's negligence and deceased's contributory negligence, and to support a proper sole cause instruction submitting the theory that plaintiff's death resulted solely from the negligence of someone other than relator. Plaintiff recovered a judgment for $5500 which was affirmed by respondents.

The opinion of respondents states the facts rather elaborately. We shall not review them further except as necessary in the discussion of each assignment of error, but refer the reader to the reported opinion for details. At the outset we note an attack by respondents' counsel on the Statement in relator's brief, made on the ground that it does not contain a fair and concise statement of the facts as required by Rules 15 and 33 of this Court and Sec. 1060, R. S. 1929, Mo. Stat. Ann., p. 1341.

This statement, after showing affirmance of the judgment by respondents and mentioning the assignments of conflict, proceeds to narrate the facts "as to material parts" by copying from the statement in its brief to the Court of Appeals when the cause was submitted there, before respondents' opinion was written. It injects certain case history, telling us two juries to whom the case was tried in Saline county at Marshall (where the casualty happened) were unable to agree upon a verdict, and that plaintiff did not recover until the third trial, after she had taken a change of venue from Saline county on account of the prejudice of the inhabitants, to Howard county. None of these facts appear in the respondents' opinion, and it was improper to make disclosures of that nature to us, as relator's

experienced counsel must have known. If they had done so before a jury it would have been reversible error.

Relator's counsel are very inept in answering the foregoing contentions. They express doubt in their reply brief whether our Rules 15 and 33 "intended to cover in its full conception, a certiorari case, because the Court of Appeals in the opinion, makes its statement of the case, to which this court will go for a statement of the facts, and there is really no need for the statement we made." Then they proceed to tell us there are *four* available statements of the facts: (1) in respondents' opinion; (2) in relator's petition for our writ of certiorari; (3) in relator's brief here; (4) in respondents' brief here. That may be relator's idea of the way to help a busy court, but it is not ours. Rules 33 provides that "On final hearing (of applications for original remedial writs) printed abstracts and briefs shall be filed in all respects as is required in appeals and writs of error in ordinary cases." And Rule 15 provides that the brief for appellant shall contain: "(1) A concise statement of the grounds on which the jurisdiction of this court is invoked; (2) a fair and concise statement of the facts of the case without reiteration, statements of law, or argument. . . . ." These rules apply to certiorari proceedings. [State ex rel. Con., etc., School Dist. v. Cox, 323 Mo. 43, 18 S. W. (2d) 61.] We agree that in a certiorari case the Statement in relator's brief should be more concise than on an ordinary appeal because the governing facts are to be found within the ordinarily narrow compass of the appellate opinion. But that is very different from dumping in our laps by reference four sources from which the facts may be learned, as relator has done.

Another thing, more or less aside. The record returned by respondents being already here, relator has brought up a printed book of 295 pages entitled "In the Supreme Court of Missouri (giving term, and style of cause) Relator's Abstract of the Record on Certiorari." It contains the pleadings, 164 pages of evidence with the caption "Bill of Exceptions," all the instructions, the motions for new trial in the circuit court, affidavits for appeal, and all the records relating to the certiorari proceeding in this court. It is needless to say we will not look at the extraneous matter in this record, or allow the bill for same to be taxed as costs under Section 1249, Revised Statutes 1929 (Mo. Stat. Ann., p. 1473). We have held so often it is unnecessary to cite authority that in a certiorari proceeding claiming conflict of a Court of Appeals opinion with decisions of this court, we will look only to respondents' opinion for the facts. (For many cases on this point see 6 West's Mo. Digest, sec 64, p. 542.)

Our Rules 11, 13, 33 and 34 indicate what ordinarily should be included in the printed abstract in a certiorari case based only upon a claim of conflict in decisions. It is the petition for the writ with a showing of service of notice or reason for the lack of it; the fact of

issuance and service of the writ; a true copy of the opinion of the Court of Appeals complained of (see State ex rel. Hayward v. Haid, 330 Mo. 686, 51 S. W. (2d) 79), a copy of the motion for rehearing or to transfer the cause to this court, and a copy of the ruling of the Court of Appeals on said motion. When any document is referred to in the opinion and thereby made a part thereof, that also should be printed as an exhibit.

It is true that our writ to a Court of Appeals requires the certification to us of "a full, true and complete transcript of the record and proceedings" in the cause. This brings up the abstracts and briefs filed in that court (along with the opinion, motions and rulings thereon) as stated in State ex rel. Seibel v. Trimble, 299 Mo. 164, 173, 253 S. W. 215, 217(1). And no doubt we can examine the abstract for documentary exhibits referred to in the opinion if they are not set out in the printed record here, as was ruled in the case just cited. It has been held we may also look to the record proper of the Court of Appeals to determine whether it lacked jurisdiction to render the particular judgment in the cause. [State ex rel. Terminal Railroad Assn. v. Hostetter, 342 Mo. 859, 865, 119 S. W. (2d) 208, 211(3).] But all this does not authorize relator in a conflict case to print in the record evidence and proceedings outside the opinion except as indicated in the last paragraph above.

After this indictment of relator's statement what shall we do? We have concluded nevertheless to decide the case on its merits for the following reasons. First, outside of the criticisms above made, the statement fairly well states the basic facts, though with some bias. Second, the brief of respondents' counsel also is subject to criticism. It contains 110 pages, and the Statement covers 19 pages as against 10 pages in the corresponding part of relator's brief. Respondents' statement does not summarize the facts and issues, but is simply a rescript of the opinion with scattered portions omitted. Third, we have less difficulty in getting an authentic perspective of the case from the opinion than from both statements. Fourth, this is more than an adversary proceeding between the litigants; harmony in our case law is involved, a matter of public interest. We do not mean this consideration will move us to waive any and all violations of our rules when the case is on a writ of certiorari for conflict in opinions, but only that it has a bearing in connection with the other reasons given.

■ The first assignment of conflict is that in holding the case was submissible on the humanitarian theory for failure to stop or slacken the speed of the train, respondents refused to consider the "essential" element of obliviousness, thereby contravening the majority opinion in Perkins v. Terminal Railroad Assn., 340 Mo. 868, 881, 102 S. W. (2d) 915, 921; Schneider v. Terminal Railroad Assn., 341 Mo. 430, 438, 107 S. W. (2d) 787, 790, and several earlier cases. The Schneider case does hold that if there be no substantial evidence of obliviousness

a submissible humanitarian case is not made, when the issue is failure to *warn*, but neither that case nor the majority opinion in the Perkins case holds that is always true when the charge is negligent failure to stop or slacken speed, as here. Obliviousness is said to be a necessary element only: (1) when it makes the injured party's position perilous; (2) or brings home to the defendant a knowledge of that peril. [Banks v. Morris & Co., 302 Mo. 254, 267, 257 S. W. 482, 484.]

But aside from that, the statement of facts in respondents' opinion says the driver of the truck testified his view of the railroad track was obstructed by a line of shrubbery; that he did not see the train until he got within twelve feet of the track, too close to stop, and heard no warning signals; and that he approached the track at a uniform speed of twelve miles per hour. The third paragraph under point 25 of the opinion* states the obstructing shrubbery was six to eight feet high, and the top of the truck was slightly over ten feet high, which warranted a jury finding that the railroad motormen could see the top of the truck as the latter moved along the road behind the shrubbery. The same view is expressed in point 27 and the third paragraph under point 12. And the fourth paragraph under point 23 declares the sustained and relatively brisk speed of the truck at twelve miles per hour, plus the fact that it could not be stopped in less than 45 feet because of the slick, icy condition of the highway, and the fact that the train was hid from the view of the truck passengers by the shrubbery up to 42 feet from the track, justified a conclusion that the trainmen ought to have anticipated the truck would not stop at the crossing (undoubtedly in the sense that it *could* not stop). So it will be seen respondents' opinion holds there was substantial evidence both that the truck passengers (at least the driver) were oblivious and that the trainmen knew of it. We have never ruled on similar facts and there is no conflict. This assignment is disallowed.

█ Another assignment of conflict is that respondents' opinion declared it was the duty of relator's motorman to stop or slow up the train when he saw the truck approaching the track, unless there were indications that it *would* stop in safety, whereas the rule announced by our decisions is that he had a right to assume that fact until it became reasonably apparent that the truck would *not* stop. The decisions cited on this point are Beal v. St. L.-S. F. Ry. Co. (Mo. Div. 2), 256 S. W. 733, 735(3); Tannehill v. K. C., C. & S. Ry. Co., 279 Mo. 158, 173, 213 S. W. 818, 822. The rule is as contended for by relator until the vehicle enters the danger zone—the extent of this depending on whether there was reason to think the driver was oblivious, unable to control the vehicle, going ahead anyhow, etc.

But there is no substance to the assignment. Relator refers us to a statement in the second paragraph of point 25 of the opinion, where

---

*References hereafter are to numbered syllabi and digest points in 132 S. W. (2d) 713 et seq.

the author said the jury could have found the motorman saw the truck traveling at a uniform speed "giving no indication that it was going to stop" while it was behind the shrubbery; and to the next sentence, stating "It gave no indication after it came out in front of the shrubbery that it would stop." We construe these expressions as meaning the truck movement indicated it was going ahead across the track. That is the way the opinion sums up the issue in the fourth paragraph of point 23 by stating the jury reasonably could have found the motorman "should have concluded that the truck would *not* stop when it was 70 feet or more away from the crossing." Also point 27 declares the trainmen "could have seen the obstruction of the shrubbery; that the street was covered with ice and snow and that the truck gave every indication that it was *not* going to stop." (Both above italics ours.)

The next assignment is that respondents' opinion contravened Kick v. Franklin, 342 Mo. 715, 724, 117 S. W. (2d) 284, 288(2), in not allowing the railroad motorman time to "visualize the situation and apply the brakes." This part of the opinion was addressed to a question under the humanitarian doctrine whether the motorman after he saw or should have seen the truck in a position of imminent peril could have stopped or retarded the train and thereby averted the collision. On that issue the element of time was important, including even such matters as how long it should have taken the motorman's perceptive powers and reflexes to function and the brakes to go into operation. In the Kick case two seconds were allowed.

But in that case the plaintiff's automobile emerged from behind an embankment 10 or 15 feet from the truck, moving at a slow speed. The railroad engineer thought it was going to stop but it did not. Its sudden appearance and continued progress gave him less time to marshal his thoughts and nerves than was true in this case where the motorman could see the truck moving at a uniform and comparatively brisk speed while it was still behind the shrubbery at least 70 feet from the track. This distinction between the Kick case and the instant case is generally suggested by point 25 of respondents' opinion. And in the same point and the fifth and sixth paragraphs of point 24 attention is called to the fact that in the Kick case there was no evidence as to the distance in which the train could be stopped; also to the fact that the train there was a steam train whereas here it was a light two-car motor train. We think the facts in the two cases were not sufficiently similar to make the rule applied there controlling here.

Another broad assignment is that respondents' opinion conflicted with the Beals, Tannehill and Kick cases, last cited above, in holding that relator's peremptory instructions were properly refused by the trial court. One of these sought to withdraw from the jury the issue of relator's primary negligence in running the train in excess of the ordinance speed of 15 miles per hour. The undisputed evidence was

that the front parts of the train and truck collided. The latter was over 30 feet long. Relator contends that under the foregoing decisions respondents should have upheld the instruction on the theory that such negligence was not a proximate cause of the collision since the truck could not have got across the track—as plaintiff claimed and respondents decided—even if the train had been traveling only at ordinance speed.

Relator's counsel make calculations, based on the testified actual speed of the train and truck, which locate the former 122.5 feet from the crossing when the latter emerged from behind the shrubbery a known distance of 42 feet to the south. To this known distance they add the width of the track, overhang of the train and length of the truck and find it would have taken the truck 5.5 seconds to clear the train; and that the train at the ordinance speed of 15 miles per hour would have traversed the distance previously fixed for it in 5.1 seconds —in other words would have reached the crossing .4 second before the truck got across. These calculations are too inexact and approximate to be convincing with the time factor so infinitestimal. Furthermore they ignore the fact that the train, running from its hypothesized location at a speed of only 15 miles per hour, would have been further away from the crossing than it was at its actual speed, when the truck driver saw it. In these circumstances he might have maintained his speed, as the calculations presuppose, instead of trying to stop, as he actually did do. In addition to this, the train would have run progressively slower than 15 miles per hour after the brakes took effect. We find no merit in this assignment.

The further contention is made under this head that the deceased was guilty of contributory negligence as a matter of law, which nullified relator's primary negligence, if any. This question is discussed under points 16-20 of respondents' opinion. It holds the contributory negligence of deceased could not have been a proximate cause of the collision because he could not have seen the train until the truck had emerged from the shrubbery and was 42 feet from the track, at which time it was too late to avoid the collision since the shortest distance in which the truck could be stopped was 45 feet. The opinion then concedes the truck driver may have been guilty of contributory negligence as a matter of law in approaching the track so fast that he could not stop after he reached the point of visibility. But it holds the deceased was not guilty of contributory negligence as a matter of law in failing to admonish the driver not to run that fast, because there was no evidence that he knew it would require 45 feet to stop the truck—which "was not any ordinary automobile;" also because the deceased was a guest, and, being deceased, there was a strong presumption that he was in the exercise of ordinary care.

Relator bitterly assails the opinion for thus exculpating the deceased. Its brief points out that respondents fixed the danger zone at

692

70 feet from the track, and charged the railroad motorman (122 feet away) with notice that the truck would not stop after it entered that zone because its speed was sustained and brisk in view of the slick roads—this although he had never seen the truck before, so far as the record shows, and at best could only discern two to four feet of the top of it moving along the highway above the shrubbery, without any knowledge whether and how it was loaded and as to its individual stopping distance. Yet in the face of all that they excused the deceased from knowing in what distance it could stop though he had actually been riding in it by the side of the driver on the icy, snowy roads most of the day for a distance of over forty miles on a round trip from Marshall to Glasgow [we take judicial notice of this distance on state highway, State v. Kenyon, 343 Mo. 1168, 1182, 126 S. W. (2d) 245, 254(19)] saying it was "not any ordinary vehicle."

█ We agree that if the comparatively uninformed trainmen were chargeable with notice of the truck driver's inability to stop short of 45 feet, then the deceased was all the more bound to know it because of his fuller information—if it was his unqualified duty to observe. That is so obvious any other conclusion would bring the opinion into conflict with such cases as State ex rel. K. C. So. Ry. Co. v. Shain, 340 Mo. 1195, 1202, 105 S. W. (2d) 915, 918, and Dempsey v. Horton, 337 Mo. 379, 387, 84 S. W. (2d) 621, 626. But in the same paragraph the opinion treats deceased as a guest. It was the truck driver's statutory duty to use the highest degree of care (Sec. 7775, R. S. 1929, Mo. Stat. Ann., p. 5197); whereas the rule in this State is that a guest is required to exercise only ordinary care, reasonably relying on the vigilance of the chauffeur. [Buehler v. Festus Mercantile Co., 343 Mo. 139, 149(2), 119 S. W. (2d) 961, 964(2).] We interpret the opinion to mean that the deceased in the latter character was not bound as a matter of law to notice how quickly the truck could stop. That holding does not conflict with any decision of this court on similar facts, so far as we are aware.

█ However, we think the above mentioned part 18 of respondents' opinion conflicts with our decisions in another respect not mentioned by relator. Of this we may take notice, State ex rel. K. C. So. Ry. Co. v. Shain, supra, 340 Mo. l. c. 1201(4), 105 S. W. (2d) l. c. 918(4). The opinion holds "there is a strong presumption that deceased was in the exercise of ordinary care." That statement does not accord with our decisions in negligence cases. It is true McDaniel v. Hines, 292 Mo. 401, 421, 239 S. W. 471, 476-7, declared: "It requires a clear case to convict the dead (who have no notice of or chance to be heard at their trial) *as a matter of law*, of contributory negligence in such cases." [Italics ours.] The deceased in that case was a female minor of limited intelligence and experience. Whether the observation is correct as a general rule we are not at liberty to inquire in this certiorari proceeding, but in any event respondents go too far in saying

the presumption of due care is *strong* in a case where deceased's contributory negligence is only a question for the jury. The decisions of this court seem to treat presumptions as merely procedural.[1]

Further, the presumption is indulged only *in the absence of evidence to the contrary.*[2] There was such evidence in this case. As the twelfth paragraph in the statement of facts in respondents' opinion recites, the truck driver testified as an eyewitness for *plaintiff*: "that he did not notice what deceased and Clough were doing as he approached the railroad track; that they *were on the seat beside him, awake,* and that they had been talking about 10 or 15 minutes before; *that he could see their faces; that they knew they were approaching the railroad crossings.*" There was further evidence that warning signals were given by the train and by a crossing bell 30 feet west of the crossing. This testimony, also, came in part from plaintiff's own witnesses, and was such that plaintiff abandoned her pleaded assignment of negligence in failing to warn. All this constituted a substantial showing that deceased: (1) could have seen and did see the train as soon as the truck driver; (2) knew they were approaching a railroad track; (3) knew an oncoming train would be concealed by the shrubbery; (4) failed to caution the truck driver by his side about the speed of the truck; (5) although he could and should have known what distance was required to stop the truck. These facts, except the fifth, are assumed or accepted as true in respondents' opinion.

Without doubt this made a prima facie case of contributory negligence. [State ex rel. K. C. So. Ry. Co. v. Shain, supra, 340 Mo. l. c. 1202, 105 S. W. (2d) l. c. 918.] The fact that deceased was a guest does not militate against that proposition. There are several cases holding evidence which would conclusively convict a motor vehicle driver of contributory negligence will not similarly convict a guest in the vehicle. [Boland v. St. L.-S. F. Ry. Co. (Mo. Div. 1), 284 S. W. 141, 144(4); Thompson v. St. L.-S. F. Ry. Co., 334 Mo. 956, 975, 69

(1) Buesching v. St. Louis Gaslight Co., 73 Mo. 233, 39 Am. Rep. 503; Cahill v. C. & A. Ry. Co., 205 Mo. 393, 405, 103 S. W. 532, 535; Stack v. General Baking Co., 283 Mo. 396, 420, 223 S. W. 89, 97; Lackey v. United Rys. Co., 288 Mo. 120, 139, 231 S. W. 956, 960(2); State ex rel. Pub. Util. Co. v. Cox, 298 Mo. 427, 432-3, 250 S. W. 551, 552(2).

(2) Crumpley v. H. & St. J. Ry. Co., 111 Mo. 152, 158, 19 S. W. 820, 821; Weller v. C., M. & St. P. Ry. Co., 120 Mo. 635, 650, 23 S. W. 1061, 1064; Idem., 164 Mo. 180, 198, 64 S. W. 141, 146, 86 Am. St. Rep. 592; Meadows v. Pac. Mut. Life Ins. Co., 129 Mo. 76, 93-4, 31 S. W. 578, 583; 50 Am. St. Rep. 427; Riska v. Union Depot Rd. Co., 180 Mo. 168, 188, 191, 79 S. W. 445, 449; Stotler v. C. & A. Ry. Co., supra, 200 Mo. 107, 146, 98 S. W. 509, 521; Cahill v. C. & A. Ry. Co., supra, 205 Mo. 393, 403-4, 103 S. W. 532, 535; Rodan v. St. L. Transit Co., 207 Mo. 392, 412, 105 S. W. 1061, 1067; McKenzie v. United Rys. Co., 216 Mo. 1, 22, 115 S. W. 13, 19; Menteer v. Scalzo, Fruit Co., 240 Mo. 177, 186, 144 S. W. 833, 835(6); Burge v. Wabash Rd. Co., supra, 244 Mo. 76, 94-5, 148 S. W. 925, 930; Lackey v. United Rys. Co., 288 Mo. 120, 139, 231 S. W. 956, 960(2); State ex rel. Mo. Pub. Util. Co. v. Cox, supra, 298 Mo. l. c. 432-3, 250 S. W. l. c. 552(2); Sullivan v. A. T. & S. F. Ry. Co., 317 Mo. 996, 1008, 297 S. W. 945, 949(3).

S. W. (2d) 936, 945(17).] But they concede that in such circumstances the contributory negligence of the guest is a question for the jury.

We should notice this Thompson case further on the point under discussion. It indulged the presumption of due care in favor of a deceased person [334 Mo. 1. c. 976-7, 69 S. W. (2d) 1. c. 946(21)] although there was at least some bystander eyewitness testimony that both the stricken occupants of the automobile appeared to be looking straight ahead and nòt toward the coming train. The decision said the evidence was *meager* because both were killed and therefore unable to testify. That decision is not in point in this case because here the truck driver did survive and testified for *plaintiff* fully enough to present a clear jury question. In other words the Thompson case does not make the decisions previously cited any the less controlling here, although it appears to be out of line with most of them. The exception to the general rule which it appears to follow, does not fit the facts of this case.

█ Respondents make another general statement in the fourth paragraph of point 13 of the opinion which we notice because of its possible effect as a precedent. They say: "It is our duty to affirm the judgment of the trial court if we can do so on any theory, whether that theory be advanced by respondent." In the interest of justice and the public interest appellate courts sometimes may introduce a new point or issue into a case on appeal, but as courts of review we understand they are ordinarily limited to points and theories presented both in the trial and on appeal. [Gooch v. Met. Life Ins. Co., 333 Mo. 191, 196, 61 S. W. (2d) 704, 707(4); Young v. Greene County, 342 Mo. 1105, 1116, 119 S. W. (2d) 369, 374(8); Sakowski v. Baird, 334 Mo. 951 956(2), 69 S. W. (2d) 649, 651(6); State ex rel. Spears v. Hughes, 346 Mo. 421, 142 S. W. (2d) 3, 5 (3).]

█ Relator assigns conflict in the ruling of respondents (points 29 to 34 of the opinion) upholding plaintiff's instruction 5. The charge is that the ruling contravened Smithers v. Barker, 341 Mo. 1017, 1028(4), 111 S. W. (2d) 47, 53(9). Instruction No. 5 predicated a recovery on primary negligence in the violation of the speed ordinance. Summarized, it told the jury their verdict should be for plaintiff if they found the deceased exercised ordinary care, even though they further found the negligence of the truck driver (who was not sued) combined with specified acts of negligence on the part of the relator and the defendant motorman in producing the death of the deceased. To this was added the further direction that *if* the jury so found the facts "any act of negligence, or want of care, on the part of the driver of said truck in driving said truck into the path of said train would constitute no defense as to the defendants in this action."

We think there is no merit in the contention. The instruction simply presented the proposition that notwithstanding the negligence of a third party may have combined with that of the defendant the latter

would not be excused. Since it was conditioned on a jury finding that the defendants were negligent, it is not open to the criticism that it excluded consideration of the truck driver's negligence as the sole cause of deceased's death. If the jury had found the defendants were not negligent they still could have found the truck driver's negligence alone caused the deceased's death. The instruction does not contravene the Smithers case on that point.

Conflict with the Smithers case is further assigned on the ground that the last part of plaintiff's instruction No. 6 was erroneous thereunder, because it was in conflict with and excluded relator's theory that the death of the deceased was caused *solely* by his own negligence and/or the negligence of the truck driver. We cannot consider this contention because respondents' opinion does not touch upon that point in any way. [State ex rel. Pub. Serv. Comm. v. Shain, 342 Mo. 867, 872, 119 S. W. (2d) 220, 222.] In fact the point was not raised by relator until he filed his motion for a rehearing in the Court of Appeals. It is true our Rule 34 makes the motion for rehearing a part of the record in certiorari, and we thus can take notice of the fact that the point was raised. But how can we quash the respondents' opinion on that question when it says nothing about it? Neither can we tell them what judgment they shall render. For these reasons the contention is overruled.

In the particulars and for the reasons specified, the record of the Court of Appeals should be quashed and it is so ordered. All concur.