MARY LOUISE MURPHY, Appellant, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a Corporation.—No. 38893.—183 S. W. (2d) 829.

Division Two, November 13, 1944.

Rehearing Denied or Motion to Transfer to Banc Overruled December 4, 1944, in Per Curiam Filed.

*Robert M. Murray* and *Walter A. Raymond* for appellant.

*Cyrus Crane, John H. Lathrop, Winston H. Woodson* and *Sam D. Parker* for respondent.

BARRETT, C.—Mary Louise Murphy had a jury verdict of $15,000.00 for her personal injuries and $10,000.00 for her husband's death against the Atchison, Topeka & Santa Fe Railway Company. The trial court, upon a consideration of all the testimony in the case, was of the view that the evidence did not reveal that state of facts and circumstances from which the jury could or should be permitted to infer and find liability against the railroad under the Kansas last clear chance doctrine. Accordingly the court sustained the railroad's motion for a new trial on the assigned grounds that it had erred in refusing demurrers to the evidence.

Mrs. Murphy contends, on this appeal, that the cause should be remanded and the jury's verdict reinstated because there ▇▇▇ was no evidence from which she could be found guilty of contributory negligence as a matter of law and there was substantial evidence that the railroad had but failed to use a last clear chance to slacken the speed of its train after she and her husband were or could have been seen upon the railroad's track in a position of helpless and inescapable peril and was, therefore, guilty of negligence under the law of Kansas.

The collision out of which this litigation grew occurred at the intersection of the Santa Fe's tracks and a public road at Edgerton, Kansas, on July 1, 1942 in the daytime. The road and the tracks intersect at an angle of sixty-one degrees and ten minutes but the tracks were spoken of as though they ran north and south and the road as though it ran east and west. Mary Louise Murphy, her husband, Glenn Murphy, and her brother-in-law, Pat Murphy, and his wife, Nadine, were riding in Glenn's 1941 Chevrolet business coupe on their way to the home of the Murphys' father and mother. Mary Louise was driving. Nadine sat nearest her in the seat and Pat sat on the right side in the seat while Glenn sat on the raised floor on a rug back of the seat. The automobile was in excellent mechanical condition and Mrs. Murphy was an experienced driver. There was a large window in the door of the car and a smaller window just to the rear of the seat and Mrs. Murphy said that because of the angle of the crossing and the manner in which they sat in the car it was necessary for her to look over her right shoulder and through the smaller window to see down the railroad track to the south. She and all the occupants of the car were familiar with the surroundings and she considered the

crossing "dangerous." She stopped the car about twenty-five feet from the west or main line track, which was about forty feet north of the railroad station, and remained stopped for four or five minutes while a freight train passed on the east track. As the caboose of the freight train passed over the crossing she put the car in low gear and started forward, shifting into second gear about fifteen feet from the west track, and proceeded at a speed of five or six miles an hour. As she proceeded forward she looked to the north on a clear and unobstructed track and immediately turned her attention to the other direction and looked south through the small car window; and, she says she continued to look south until she actually saw the train approaching from that direction. She says that as she proceeded towards the tracks, looking south, her view of the tracks to the south was first obstructed by the station. As she continued on her view of the tracks to the south was obstructed by a bay window on the front of the station and as she continued on still farther her view of the tracks to the south was obstructed by a water tank 318 feet south of the center line of the crossing. When she could and did see the train it was 100 to 150 feet south of the water tank. The bumper of the automobile, at least the right side of it, was then over the first rail of the track and that was the first time she could see the train. She immediately "slammed on" the brakes and the car stopped almost instantly, "about in the middle between the two tracks," two or three feet over. She shifted the car from second gear to neutral and into reverse but before she could back off the car was struck by a northbound train. The Murphy brothers were killed and she became unconscious after the car was struck.

The train was the second section of the Santa Fe's No. 8 passenger train consisting of two baggage cars and four express cars loaded with auxiliary airplane tanks. West of Edgerton there had been a service application of the brakes and the speed of the train had been reduced to eighty miles an hour for an eighty mile an hour curve. The next curve was a seventy or a seventy-five mile an hour curve and there had been a second service application of the brakes and the train had been steadied at seventy miles an hour and continued at that speed from the time Mrs. Murphy saw it until it struck the car at the crossing. One of the appellant's expert witnesses, a retired Santa Fe engineer who was familiar with that track and crossing, answering a hypothetical question testified that in 300 feet (the approximate distance from the crossing to the water tank) the speed of the train could have been cut in half or reduced from seventy-five miles an hour to about thirty-five miles an hour. Another expert witness testified that in 350 feet at seventy miles a hour the speed of the train could have been reduced to twenty-five or thirty miles an hour and that "it should take about six or six and a half seconds to slow that train down to

reach that crossing'' rather than the three to ▮▮▮ three and a half seconds it would take at a speed of seventy miles an hour.

To demonstrate that Mrs. Murphy could and would have backed the automobile off the track within the 300 or the 350 feet had the speed of the train been slackened by an emergency application of the brakes, as her expert witnesses said it could, a service manager of a Chevrolet company made certain tests. He placed a 1941 Chevrolet business coupe upon the track at Edgerton so that the bumper would extend to the inner rail and by a stop watch backed it clear of the tracks in ''two to two and a half seconds.''

▮ It is assumed, for the purpose of this opinion, that the evidence in this case demonstrates liability on the part of the railroad under the Kansas last clear chance doctrine (Leinbach v. Pickwick-Greyhound Lines, 138 Kan. 50, 23 P. (2d) 449, 92 A. L. R. 1; Trower v. M.-K.T. R. Co., 347 Mo. 900, 149 S. W. (2d) 792; Sing v. St. Louis-S. F. Ry. Co. (Mo.), 30 S. W. (2d) 37) unless it also appears from the evidence that she was guilty of contributory negligence within the meaning of the law of Kansas. Bazzell v. Atchison, T. & S. F. Ry. Co., 133 Kan. 483, 300 P. 1108; Caylor v. St. Louis-S. F. Ry. Co., 332 Mo. 851, 59 S. W. (2d) 661. It is assumed that the appellant was not guilty of contributory negligence in not stopping and making certain that a train was not approaching before she drove upon the crossing. Compare Eubank v. Kansas City Ter. Ry. Co., 346 Mo. 436, 142 S. W. (2d) 19; McMahon v. J. & P. Ry. Co., 96 Kan. 271, 150 P. 566; Torgeson v. M.-K.-T. Ry. Co., 124 Kan. 798, 262 P. 564 and Wehe v. A., T. & S. F. Ry. Co., 97 Kan. 794, 156 P. 742; Bunton v. A., T. & S. F. Ry. Co., 100 Kan. 165, 163 P. 801; Brim v. A., T. & S. F. Ry. Co., 136 Kan. 159, 12 P. (2d) 715; Dickerson v. M.-K.-T. Ry. Co., 149 Kan. 314, 87 P. (2d) 585. It is also assumed that when Mrs. Murphy saw the train 100 to 150 feet south of the water tank traveling at more than 100 feet a second and slammed on the brakes and stopped on the track rather than proceeding forward and across the track at five or six miles an hour she was acting in an emergency not created by her own antecedent negligence (2 Restatement, Torts, Secs. 296, 470) and was not guilty of contributory negligence when she did not choose the most prudent course and continue on across the track. Hill v. Southern Kansas Stage Lines, 143 Kan. 44, 53 P. (2d) 923.

▮ Despite the assumptions and however favorably the appellant's cause may be viewed (Trower v. M.-K.-T. Ry Co., supra) the evidence unmistakably demonstrates her guilty of contributory negligence which began even after she was stopped upon the track in helpless peril and continued until it was impossible for the railroad to have averted the collision by slackening the speed of the train. Most favorably considered the hypothetical questions required an emergency application of the train's brakes at 300 or 350 feet from the crossing

or at seventy miles an hour (102 feet a second) two and ninety-seven hundredths or three to three and one-half seconds from the crossing. Assuming, as we have said, that the appellant was in helpless peril when she slammed on the brakes and stopped with her car in neutral and the train then 318 feet or three split seconds away she said she "put the car in reverse to back off the track" and it was then "about in the middle between—it went about two or three feet over the first track after I put on the brake—over the first rail." After putting the car in neutral she said she "shifted into reverse to back off the track." The appellant earnestly insists in her reply brief that there was evidence warranting the inference "that the automobile was moving backward at the time of the collision" and; she was asked this question: "Now, do I understand you correctly to say that you started to back the automobile off the track" and she answered, "That is right, to the best of my recollection I tried to back off the tracks." The only evidence in the case as to the time in which a car (her car) could be backed off the track was the testimony of her witness, the service manager. He said he made tests to determine the fact and "We did that in something like two seconds, two seconds and a half by the watch." To the rhythm of a stop watch he said: "I was able to back off there in two to two and a half seconds." When the appellant put the car in reverse and started to back off any emergency was at an end—she then understood the situation and if the train was then three seconds away and she could back off in the maximum of two and a half seconds she had control of the situation and of the emergency and negligently failed to exercise that control. Under ▮ any view of the evidence she had a margin of safety of one-half a second. The case against her is close. It depends on a split second but her assumed case of liability against the railroad is close and likewise depends upon two split seconds. Since she could have gotten off the track if she had utilized the two and a half seconds when the train was three seconds away her case is in exactly the same predicament as that of the lady who could have taken one step to safety from the path of an oncoming streetcar. Dearing v. Wichita R. & L. Co., 130 Kan. 142, 285 P. 621. Her situation is in fact, except as to the number of seconds, the same as that of the man who had nine seconds in which to back his car off the track but failed to do so. Jamison v. A., T. & S. F. Ry. Co., 122 Kan. 305, 252 P. 472. Her case is not as it would be had there been evidence from which the jury could have found that three seconds were required for her to back the car off (Eubank v. K. C. Ter. Ry. Co., supra) nor as if she were unable because of an emergency (Hill v. Southern Kansas Stage Lines, supra) or her car stalling to get off the track as in McMahon v. J. & P. Ry. Co., supra. This is not to charge the appellant with conduct and a degree of care becoming an expert or a superman because under any view of the evidence all the time she needed for her own safety was

two and a half seconds. It makes no difference how much time in addition to three seconds it would take the train to reach the crossing —the more time given the train the plainer the weakness of the appellant's case becomes. The question is, how much time was required for her to back off the track under the existing circumstances. If more than two and a half seconds were needed for her safety the fact should have been made to appear from the evidence.

The Kansas last chance doctrine presupposes the appellant's contributory negligence but her negligent conduct "ceases to be a complete defense only when such plaintiff is in helpless peril, that is in a condition of peril from which he cannot by the exercise of reasonable care extricate himself. So long as the plaintiff has the power to avert the danger by using reasonable care, it is his duty to do so and his failure to do so is negligence concurrent with and contributory to that of the defendant and bars recovery." Bollinger v. St. Louis-S. F. Ry. Co., 334 Mo. 720, 728, 67 S. W. (2d) 985, 989. "If just before that climax only one party had the power to prevent the catastrophe, and he neglected to use it, the legal responsibility is his alone. If, however, each had such power, and each neglected to use it, then their negligence was concurrent and neither can recover against the other." Dyerson v. Union Pac. R. Co., 74 Kan. 528, 536-537, 87 P. 680, 683; Goodman v. K. C. M. & S. R. Co., 137 Kan. 508, 21 P. (2d) 322; annotation 92 A. L. R. 47, 118-123.

Because the loss and damage sustained by the appellant as the result of her husband's death was contributed to by her own negligence she may not recover that loss or damage in this action under the law of Kansas. Cruse v. Dole, 155 Kan. 292, 297, 124 P. (2d) 470, 474; Rathbone v. St. Louis & S. F. Ry. Co., 113 Kan. 257, 214 P. 109; annotation 87 A. L. R. 589; the annotations in 23 A. L. R. 670, and 69 A. L. R. 47; 25 C. J. S., Sec. 46 and 16 Am. Jur., Sec. 137.

The judgment is affirmed and the cause remanded. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.

### ON MOTION FOR REHEARING.

PER CURIAM:—In her motion for a rehearing the appellant points out that we have misstated a fact. It is said that our determination of this cause is based on that erroneous misstatement of fact. To demonstrate that Mrs. Murphy could and would have backed the automobile off the track within the 300 to 350 feet (the three to three and a half seconds) we said that her expert witness, a service manager of a Chevrolet company made certain tests and that "He placed a 1941 Chevrolet business coupe upon the track so that the bumper would

extend to the inner rail and by a *stop* watch backed it clear of the tracks in 'two to two and a half seconds.' " We said: "To the rhythm of a *stop* watch he said: 'I was able to back off there in two to two and a half seconds.' " The misstatement consists in the use of the word "stop." A "stop watch" ▮ was not used and no witness .used the word "stop." The fact is the witness said: "Well, the test that we made was by driving up onto the railroad track to where the front of the bumper, the foremost front part of the bumper would extend to the inner rail, and backing it back clear of what a locomotive would clear, the clearance of a locomotive back off the crossing. We did that in something like two seconds, two seconds and a half by the watch. *We arrived at that time by observing the second hand on the watch and counting it in a manner of 1, 2, 3, as seconds, and by making the test trial I was able to back the coupe off of there in two to two and a half seconds.*" Or, as appellant's counsel state in their brief: "In making the tests *they practiced counting seconds as nearly as possible with the rhythm of the second hand of a watch,* and then counted as they drove the automobile. The car was started and driven clear of the track, as the other called off, one, two, three, *and the seconds and parts of a second were thus estimated,* and the time estimated as from two to two and a half seconds." But modifying the opinion accordingly, striking out the word "stop," and using the language of the witness or counsel's paraphrase of it, "with the rhythm of the second hand of a watch," the fundamental, determinative facts remain unchanged.

It is true that all the evidence as to time and distances was an "estimate" based on best judgment and in dealing in half seconds, two and a half seconds or even three seconds reasonable minds may differ and a calculation of four or five tenths of a second may be "too inexact and approximate to be convincing with the time factor so infinitesimal," State ex rel. Alton R. Co. v. Shain, 346 Mo. 681, 691, 143 S. W. (2d) 233, 238. But in this case the only evidence we have as to time is the appellant's evidence and, however it was determined, it is a maximum of two and a half seconds. Here there were no conflicts in the estimates in question. It is true that the time was determined by an "expert" but in using the established time we do not hold that the appellant, as a matter of law or duty, was bound to act with the precision and care of an expert. Neither do we hold that by reason of experiments conducted by an expert, not then in peril or acting under an emergency, that the appellant is conclusively bound by the experiment in every detail. Again we repeat, the only evidence we have in all the case, by which the appellant's conduct is to be judged, under the Kansas last chance doctrine, is her own evidence and though it comes from an "expert" it is all there is and it is "two to two and a half seconds" and her case must be adjudged accordingly.

The point is that the appellant's own evidence, the only evidence there is on the subject, shows that when the train was three to three and a half seconds away she needed but two or two and a half seconds for safety and if that is all the time needed by her own evidence she had it and yet she failed to utilize it or avail herself of it. Thus, under her own evidence she demonstrates, at best, equal power and chance with the railroad to avoid the catastrophe and under such a showing reasonable minds may not differ and find liability under the last chance doctrine of Kansas. Here the appellant's evidence shows that she could have avoided the collision or, at best, that both she and the railroad could have done so and that demonstrates concurrent as well as contributory negligence and bars recovery under the law of Kansas. Dyerson v. Union Pac. R. Co., supra; Goodman v. K. C. M. & S. R. Co., supra; Bollinger v. St. L.-S. F. Ry. Co., supra.

Accordingly the opinion is modified as indicated and the motion for a rehearing is overruled. The motion to transfer to the court en banc is denied.